### SECURITIES & EXCHANGE COMMISSION v. OKIN.
### Civ. 19-560.

District Court, S. D. New York.
March 1, 1943.

John F. Davis and Edward H. Cashion, both of Philadelphia, Pa., and Sidney H. Willner and John J. Prendergast, both of New York City, for Securities & Exchange Commission.

Samuel Okin, of New York City, pro se.

RIFKIND, District Judge.

This is a motion by plaintiff to punish defendant for contempt for violation of an interlocutory injunction issued by this court on January 7, 1943.

It is undisputed that defendant had knowledge of the order, that it applied to him and that after he had such knowledge he transmitted to the stockholders of Electric Bond and Share Company a letter dated January 11, 1943, copy of which is annexed to the moving affidavit.

Extensive affidavits were submitted by both sides and the matter was argued at great length on two days, the defendant who is a lawyer appearing in his own behalf. At the opening of the hearing defendant was asked by the court whether he desired a trial by jury of the issues of fact and whether he wished a stenographic record made of the argument. He answered both questions in the negative. At the close of the argument defendant stated that if the court should feel disposed to adjudge him in contempt he desired an opportunity to present additional evidence on the issues of fact. Plaintiff does not request any further hearing. I find that the application can be disposed of on the undisputed facts and that a further hearing is not warranted.

Upon the argument plaintiff relied upon six specific objections to the letter of January 11, 1943, and I shall treat any other grounds for its motion as abandoned. With respect to each objection the question is whether the statement made or the omission complained of renders the communication false and misleading and whether, if so, it comes within the condemnation of the injunction. They will be treated seriatim.

1. The first item is embraced in the following paragraph: "At this point, I also instituted a proceeding in the Supreme Court of the State of New York to compel the Electric Bond and Share Company to divest itself of control over the management of Electric Power & Light Corporation and American Power & Light Company and its subsidiaries which was so detrimental to the interests of the Electric Bond and Share Company and its stockholders as hereinafter stated. Although many millions of the company's assets had been invested in the stock of these companies, their market value had fallen to such an extent that they did not repre-

sent more than approximately three (3%) per cent of the value of the entire assets of the company and the income therefrom was so comparatively small with respect to the entire income of the company that it was obvious that the operation of these many companies was not only in my opinion causing substantial losses to the Electric Bond and Share Company but in addition was for the benefit solely of enabling the business associates and friends of the management of Electric Bond and Share Company to continue to receive very lucrative salaries."

Defendant admitted upon the argument that the operation of the mentioned companies did not, in fact, cause "substantial losses" to Electric Bond and Share Company in the sense that outgo exceeded income; that he really meant that the capital invested could be more profitably employed elsewhere. In his affidavit defendant has offered additional explanations. None of them makes the statement true. It would be generous to call the statement misleading. The circulation of such a statement was clearly forbidden by the injunction and constitutes a violation thereof.

■■ 2. The second item to which objection is taken relates to a proposed subordination of claims by Electric Bond and Share Company against United Gas Corporation. The amount of these claims was $52,925,000. It was proposed that these claims be subordinated to enable United Gas Corporation to sell $70,000,000 in bonds to insurance companies and to use $55,000,000 of the proceeds to redeem its outstanding first preferred stock. The letter states: "In my opinion if this subordination had taken place, it would have caused very substantial losses to Electric Bond and Share Company; probably would have completely destroyed the possibility of ever collecting the said $52,925,000. claim against the United Gas Corp., which is the largest single asset owned by the Electric Bond and Share Company; and the result would have been most disastrous to the entire financial structure of the Electric Bond and Share Company".

It is contended by plaintiff that there is no ground for the opinion expressed and that it is false and misleading. This contention is based in part on the assertions that the validity of the claims of Electric Bond and Share Company against United Gas Corporation and their priority were shrouded in considerable doubt; that it was not true that the proposed subordination would render the claims uncollectible; and that in no event would the result be disastrous to Electric Bond and Share Company. Whether there is any ground for the opinion expressed by the defendant is too close a question to be decided on the affidavits submitted. The injunction did not prohibit the circulation of the quoted statement, if it is true. It enjoined the publication only of false and misleading statements. It cannot be denied that if there were but one truth—and that a knowable one—the criticized paragraph would be found wanting. From the affidavits before me it is fairly clear that even if there be some basis for the opinion expressed it is not broad enough to justify the superlatives "completely" and "most disastrous". An experienced reader would readily perceive that hyperbole is one of the author's favorite tools and that he, therefore, chafes under the restraints of Rule X–14A–5 of the Regulations of the Securities and Exchange Commission and of the injunction. Nevertheless it seems to me that the letter must be read with some regard to the fact that it belongs to the class of contentious writings and that the art of advocacy has always taken some liberties with the "whole truth". Furthermore, it is a letter by a minority stockholder in opposition to the management. That factor does not constitute a license to lie but it does afford the reasonable expectation that under-statement or exaggeration will be answered—a condition not always to be anticipated when the communication reviewed issues from the management.

In view of the doubt on the underlying issue and the fact that the statement is tendered as an opinion in a setting of contentious advocacy, I am unwilling to hold that defendant was contumacious in circulating the quoted paragraph.

3. The third objection is addressed to the following quotation: "On February 20th, 1942, the Securities and Exchange Commission made an order wherein it permitted the Electric Bond and Share Company to only use $2,000,000 of the said $5,000,000 towards the purchase of its preferred stock and retained jurisdiction as to the remaining $3,000,000 'pending the formulation by the company of an exchange plan or plans for *Distribution of Assets to the Preferred Stockholders.'*"

It is asserted by plaintiff that the quoted clause is improperly quoted because it is capitalized and that it is misleading because it induces security holders to believe that the Commission intends that all of the assets of the corporation be distributed to the preferred stockholders when, in fact, the Commission has never taken any such position. It is not questioned that the quotation is accurate except for its capitalization. Nevertheless it is clearly misleading in its new setting. Read in the context of the Commission's opinion (Release No. 3339) in an atmosphere of lawyers' idioms it conveys one meaning. In its new context, in its headlined form, it is very likely to convey the impression that the Commission is awaiting plans for the distribution of all the corporate assets to the preferred stockholders. Defendant is a lawyer and alive to the different connotation of the clause against its new background. That is why he selected that quotation. I conclude that the circulation of this paragraph was violative of the injunction.

■ 4. In the letter of January 11, 1943, defendant states that he desires to bring about the removal of eight named directors. He is silent about the ninth director, one, Mr. Monroe, although Monroe has stated that he would refuse to serve on the board with defendant. Plaintiff's affidavit states its position thus: "Mr. Monroe's present intention not to serve with Mr. Okin is, of course, a fact and it is a fact which the stockholders of Electric Bond and Share Company are certainly entitled to know in choosing between the present Board of Directors of Electric Bond and Share Company and the Board of Directors which Mr. Okin asks to substitute for it".

There is no dispute about the facts. However, it strikes me that we should not expect such an excess of virtue on the part of defendant. Defendant is not seeking Monroe's removal. Must he nevertheless publish Monroe's refusal to serve with him on the board? Monroe may change his mind. The management or Monroe can send another communication to the stockholders. Both Rule X–14A–5 and the injunction are intended to govern ordinary mortals, not saints. They should not be so construed as to impose canons of conduct too lofty for human acceptance. Were the defendant to supply the omission which the plaintiff advocates he would expose himself to ridicule and render his campaign futile. I, therefore, do not find that the omission

complained of constitutes a violation of the injunction.

■■ 5 & 6. The fifth and sixth items relate to the failure of defendant to correct two false or misleading statements circulated in previous communications. The injunction order contained no express provision requiring correction of previous misstatements. It did express a prohibition against violations of the rules and regulations of the Securities and Exchange Commission. Rule X–14A–5 prohibits solicitation by communications which fail "to correct any statement in any earlier communication * * * which has become false or misleading". But I have come to the conclusion that insofar as the injunction broadly restrained violation of the Commission rules it was insufficiently precise. The order has since been resettled but only after the conduct here complained of had occurred. In Securities and Exchange Commission v. Okin, 132 F.2d 784, 787, decided by the Circuit Court of Appeals, Second Circuit, on January 4, 1943, the court said, "If the Commission can prove this, it may be able not only to secure from the district court an injunction against further publication of the 'false' or 'misleading' assertions, but an affirmative direction that before the defendant proceeds to solicit any proxies, he shall correct the misinformation which he has already spread among shareholders".

In the instant case the injunction order did not contain such an affirmative direction. In this respect, therefore, I find that defendant was not contumacious.

For the reasons stated, the defendant is adjudged guilty of contempt; and in order to purge himself defendant is required, within ten days after the making of an order hereon, to send a letter to all stockholders of Electric Bond and Share Company correcting the misstatements in his prior communications, the form of such communication, if not agreed upon between the parties, to be settled with the order; otherwise the defendant is fined an amount sufficient to defray the expense of printing and mailing, postage prepaid, of a copy of the order to be entered hereon, together with a brief explanatory statement, to all stockholders of Electric Bond and Share Company to be paid to the plaintiff and to be employed for the purpose indicated.

Submit findings, together with affidavits as to such expense and settle order on two days' notice.