Samuel R. ROSEN, individually and as a common stockholder of Alleghany Corporation, and Randolph Phillips, Myron Neisloss and Edward C. Sterling, as members of the Protective Committee for Common Stockholders of the Alleghany Corporation and as common stockholders of Alleghany Corporation, Plaintiffs,

v.

ALLEGHANY CORPORATION and Robert R. Young, Defendants.

United States District Court
S. D. New York.
Aug. 6, 1955.

Rosston, Hort & Brussel, New York City, for plaintiff.

George Brussel, Jr., Eugene G. King, New York City, of counsel.

Randolph Phillips, pro se.

White & Case, New York City, for defendants.

David Hartfield, Jr., J. Adam Murphy, Andrew O. Miller, Morton Moskin, New York City, of counsel.

DIMOCK, District Judge.

Three motions are now before me:

A. Plaintiffs, Samuel R. Rosen, individually and as a common stockholder of Alleghany Corporation, and three others, as members of a protective committee for common stockholders and as common stockholders, move for an order (1) directing defendants, Alleghany Cor-

poration and Robert R. Young, forthwith to cause certain proxy material of plaintiffs Phillips, Neisloss and Sterling, the "Committee", to be addressed and mailed to the stockholders of Alleghany, (2) directing defendant Alleghany to permit plaintiff Rosen to inspect and make extracts from the stock list of Alleghany and, pending such inspection, restraining defendants from making any proxy solicitation, (3) directing Alleghany to cause its deferred annual stockholders' meeting to be held at a date, subsequent to Rosen's inspection, to be fixed by the court, (4) restraining defendants from soliciting proxies for use at Alleghany's deferred stockholders' meeting until plaintiffs have been accorded the relief requested under (1), (2) and (3), above and (5) restraining defendants from employing or using The Kissel Organization or any other proxy solicitors for the purpose of soliciting proxies for the election of directors at Alleghany's deferred annual stockholders' meeting.

B. Defendants move, pursuant to Rule 12, F.R.C.P., 28 U.S.C., for an order (1) dismissing plaintiffs' second claim contained in the complaint, (2) dismissing plaintiffs' third claim contained in the complaint, (3) dismissing plaintiffs' fourth claim contained in the complaint and, pursuant to Rules 23, 17(b) and 12(f), F.R.C.P., (4) striking from the complaint all reference to the "Committee".

C. Defendants move for an order (1) declaring plaintiffs' proxy material to be violative of Rule X–14A–9 of the Regulations of the Securities and Exchange Commission, (2) restraining plaintiffs, individually and/or as a Committee, and their agents, etc., from taking any steps to cause defendants, any of them or their agents, etc., to mail plaintiffs' proxy material to the stockholders of Alleghany and (3) restraining plaintiffs and their agents, etc., from attempting to communicate, by mail or otherwise, with stockholders of Alleghany regarding plaintiffs' proxy material.

The complaint sets forth five "claims":

The first alleges that defendants have already begun solicitation of Alleghany's stockholders with a view to influencing them not to execute plaintiffs' proxies and that this solicitation by Alleghany entitles plaintiffs to have Alleghany mail their proxy material to stockholders under Rule X–14A–7 of the Regulations of the Securities and Exchange Commission. Federal jurisdiction is alleged to exist under the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a, 78aa. The relief sought is (1) a declaration that the alleged acts of defendants do constitute proxy solicitation by Alleghany and (2) a direction that Alleghany forthwith cause plaintiffs' proxy material to be mailed in accordance with plaintiffs' orders.

The second claim alleges that Alleghany's 1955 annual stockholders' meeting, originally scheduled for May 4, 1955, was unlawfully postponed by defendants and that plaintiff Rosen is entitled, by virtue of section 113 of the Stock Corporation Law of New York, McKinney's Consol.Laws, c. 59, to inspect and make extracts from Alleghany's stock lists and has been denied the exercise of this right by defendants. Federal jurisdiction is alleged to exist by virtue of diversity of citizenship. The relief sought is (1) a direction that Alleghany permit "plaintiffs" to inspect its stock list and make extracts therefrom and that Alleghany refrain from making any proxy solicitation until this relief is granted and (2) a direction that Alleghany cause its deferred annual stockholders' meeting to be held at a date, subsequent to Rosen's inspection, to be fixed by the court. By virtue of the first and second claims plaintiffs also seek (a) a declaration that defendants' alleged solicitations were false and misleading in violation of Regulation X–14 of the Securities and Exchange Commission and (b) a direction that defendants refrain from soliciting proxies for the election of directors at Alleghany's deferred annual stockholders' meeting until plaintiffs have been afforded the relief requested under (2)

above, of the first claim and (1) and (2) above, of the second claim.

The third claim alleges that defendant Young has conspired with Alleghany and its officers to prevent plaintiffs from communicating with the stockholders of Alleghany in respect of plaintiffs' proxy material and alleges that the matters alleged in the first and second claims are acts done in furtherance of the conspiracy. Federal jurisdiction is alleged to exist by virtue of diversity of citizenship. The relief sought is damages.

The fourth claim alleges that defendants intend to hire The Kissel Organization to solicit proxies for the management in connection with Alleghany's deferred annual stockholders' meeting and that it is improper for the corporation to expend its funds for these services. Federal jurisdiction is alleged to exist by virtue of diversity of citizenship. The relief sought is a direction that defendants refrain from employing or using The Kissel Organization or any other proxy solicitors for the purpose of soliciting proxies for the election of directors at Alleghany's deferred annual stockholders' meeting.

The fifth claim alleges that the alleged acts of defendants relied upon by plaintiffs as solicitation warranting plaintiffs' request that Alleghany be directed to mail plaintiffs' proxy material were libelous with respect to plaintiffs Phillips, Neisloss and Sterling, the "Committee", and that each of these plaintiffs have been injured thereby in the amount of $250,000. Federal jurisdiction is alleged to exist by virtue of diversity of citizenship. The relief sought is damages.

It will be observed that the relief sought by plaintiffs in their motion now before me has the following relationship to the complaint:

Part (1)[1] of plaintiffs' motion is based upon the first claim in the complaint.

Parts (2) and (3) of plaintiffs' motion are based upon the second claim in the complaint.

Part (4) of plaintiffs' motion is based upon the first and second claim in the complaint.

Part (5) of plaintiffs' motion is based upon the fourth claim in the complaint.

I shall deal first with plaintiffs' motion and the parts of defendants' motion, designated "B" above, which bear upon the disposition of plaintiffs' motion. Next I shall take up the remaining parts of defendants' motion "B". Finally, I shall deal with defendants' motion designated "C", above.

### Plaintiffs' Motion

*Plaintiffs' Request for Injunctive Relief With Respect to the Mailing of Their Proxy Material.*

Plaintiffs seek an order directing defendants to mail proxy material prepared by the "Protective Committee".

Rule X–14A–7(b) of the Regulations promulgated by the Securities and Exchange Commission provides, in material part, as follows:

"(b) Copies of any proxy statement form of proxy or other communication furnished by the security holder shall be mailed by the issuer to such of the holders of record * * * as the security holder shall designate. The issuer shall also mail to each banker, broker or other person * * * a sufficient number of copies of such proxy statement, form of proxy or other communication as will enable the banker, broker or other person to furnish a copy thereof to each beneficial owner solicited or to be solicited through him. Such material shall be mailed by the issuer with reasonable promptness after receipt of a tender of the material to be mailed, of envelopes or other containers therefor and of postage or

---

1. For convenience I refer to the various claims for relief and branches of plain-tiffs' motion by reference to the numbers used above in describing them.

payment for postage, except that such material need not be mailed prior to the first day on which the solicitation is made on behalf of the management. * * * "

Plaintiffs' application is based on their contention that both defendants have already begun to solicit the stockholders of Alleghany to refrain from giving proxies to the Committee. The utterances upon which plaintiffs rely were all oral or written statements made by defendant Young or by one David W. Wallace, Secretary-Treasurer of Alleghany, which were published in newspapers at no cost to Alleghany.

 Defendants resist this branch of plaintiffs' motion upon the ground that the utterances relied upon by plaintiffs fail to constitute proxy solicitation. My view of this part of plaintiffs' motion makes it unnecessary for me to decide whether it is plaintiffs or defendants who are correct in their characterization of the utterances.

Assuming that the utterances may be characterized as solicitations which are subject to S.E.C. regulation the relief which plaintiffs seek would not be proper here.

In Securities and Exchange Commission v. Okin, 2 Cir., 132 F.2d 784, 786, the Court of Appeals, per Judge Learned Hand, had before it " * * * the question whether the power of the Commission under § 12(e) [of the Public Utility Holding Company Act of 1935, 15 U.S.C. § 791(e) which is substantially identical with Section 14 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78n (a)] is limited to the regulation of a 'proxy, power of attorney, consent, or authorization,' strictly as such; or whether it extends to any other writings which are part of a continuous plan ending in solicitation and which prepare the way for its success." The court decided that the regulatory power of the S.E.C. extends to such preliminary writings observing that were this not so " * * * an easy way would be open to circumvent

the statute; one need only spread the misinformation adequately before beginning to solicit, and the Commission would be powerless to protect shareholders." I am now assuming that the thrust of the holding in this case is such as to make the utterances of Young and Wallace relied upon by plaintiffs subject to S.E.C. regulation. Still the case is no authority for the position which plaintiffs take. The reason for subjecting preliminary utterances which are a part of a continuous plan ending in solicitation to S.E.C. regulation is different from the only possible reason for the adoption by the Commission of Rule X–14A–7(b). The reason for the former is that no one should be allowed to influence the decision of stockholders in a proxy fight by the use of false or misleading material regardless of whether that material is embodied in the particular form specifically made subject to the Commission's regulation; the reason for the latter can only be that management should not be allowed to influence the stockholders' decisions by use of the corporations' mailing facilities to the exclusion of the opposition.

Assuming that the utterances of Young and Williams were solicitations they are subject to regulation by the S.E.C. and plaintiffs are protected to the extent that the Okin case contemplated. Plaintiffs are free to utter as much contradictory matter as they choose and can have it published as news at no cost to themselves as did the defendants. Thus they now have access equal to that of management to the persons whom they wish to solicit. They have no right to have Alleghany provide them a means of access by mail, the more effective means, before Alleghany's management chooses to avail itself of that method.

In so far as plaintiffs' motion seeks an order directing defendants to cause the proxy material of the "Protective Committee" to be addressed and mailed to the stockholders of Alleghany in accordance with the instructions of the Committee, the motion is denied, with leave to renew if defendants refuse to mail plaintiffs'

864

proxy material when defendants' proxy material is mailed.

*Plaintiffs' Request for Injunctive Relief With Respect to an Inspection of Alleghany's Stockbook by Plaintiff Rosen and the Convention of the Deferred Annual Stockholders' Meeting at a Date, Subsequent to Rosen's Inspection, to be Fixed by the Court.*

Plaintiffs seek an order directing defendant Alleghany to permit plaintiff Rosen to inspect and make extracts from Alleghany's stock lists, restraining defendants from mailing any proxy material pending Rosen's inspection and directing that the deferred annual stockholders' meeting of Alleghany be held on a date, subsequent to Rosen's inspection, to be fixed by the Court. As has been indicated above, this branch of plaintiffs' motion rests upon the complaint's second claim which deals with inspection of the stock list and control of the date for holding the meeting. Defendants' motion designated "B" seeks, inter alia, an order dismissing the second claim upon the grounds (1) that this court has no jurisdiction over the subject matter of this claim and (2) that this claim fails to state a claim upon which relief can be granted. I shall consider defendants' motion first.

The first ground of defendants' motion rests upon the assertion that there is not $3,000 exclusive of interest and costs in controversy. This assertion in turn is bottomed upon the case of Greenough v. Independent Lead Mines Co., D.C.D.Idaho, 45 F.2d 659. In that case a motion to remand to a state court was granted upon the ground, inter alia, that the right there asserted to inspect books could not "be ascertained in money." Plaintiffs counter by citing Textron, Inc., v. American Woolen Co., D.C.D.Mass., 122 F.Supp. 305. In that case a preliminary injunction was issued in a suit to enjoin continuation of an adjourned stockholders' meeting and the next proposed order of business, the announcement of the results of a vote for officers and directors. The plaintiff charged that a quorum was not present at the meeting at which the officers and directors were voted for. Judge Aldrich decided that the matter in dispute was "the value of the property to be protected" citing Bitterman v. Louisville & Nashville R. Co., 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171. The property to be protected, he found, was "at least the value of the plaintiff's share in the company, control or partial control of which may depend upon the outcome of the election." 122 F.Supp. at page 308.

I accept Judge Aldrich's reasoning and will follow his decision. The question remains whether "the value of the property to be protected" is as much as $3,000. The stock owned by Rosen who is to do the actual inspection is not worth that much but the stock owned by the other plaintiffs, the members of the committee, is worth more. All of the plaintiffs in the complaint pray that they be permitted to inspect the stock lists but the allegations make it plain that Rosen is the only one who claims the right to do it in person. It is alleged that the purpose of Rosen's inspection is "to assist the Committee and the other individual plaintiffs in the distribution to the stockholders of Alleghany of the Committee's proxy material * * * and to assist the Committee and its members to effect the intervention in [a certain] action [against Alleghany] of other stockholders of Alleghany." Thus it is sufficiently alleged that all plaintiffs seek a direction of the court that Rosen be permitted to examine the list on his and the Committee's behalf. Under the circumstances the "property to be protected" is the stock interest of all the plaintiffs. Since that exceeds $3,000 in value this court has jurisdiction.

Defendants say that plaintiffs have not established the good faith of their application for inspection. The nature of the controversy appears from other facets of those motions and, as will hereinafter appear, I find that plaintiffs are acting in good faith.

With great regret, however, I have come to the conclusion that the United States District Courts lack power

to issue a direction in the nature of mandamus and that a direction that a corporation permit a stockholder to examine the stock list is such a direction.

The latter proposition is established by a wealth of authority. Dominus Rex v. The Fraternity of Hostmen in New-castle-upon-Tyne, 2 Str. 1223, 93 Eng. Rep., K.B. 1144; The King v. Shelley, 3 T.R. 141, 100 Eng.Rep., K.B. 498; The King v. Tower, 4 M. & S. 162, 105 Eng. Rep., K.B. 795; Swift v. State, 7 Houst. 338, 6 A. 856, 32 A. 143; Greenough v. Independent Lead Mines Co., D.C.D. Idaho, 45 F.2d 659, supra.

 The proposition that the District Courts may not issue directions in the nature of mandamus except in aid of jurisdiction already acquired is equally well settled. Insular Police Commission v. Lopez, 1 Cir., 160 F.2d 673, 677, and cases cited. This rule arises from the determination that Congress, by using the words "suits of a civil nature, at common law or in equity" in paragraph (1) of § 24 of the Judicial Code, 28 U.S.C., 1940 ed., § 41(1), withheld power to entertain mandamus proceedings. I would like to be able to say that this inconvenient omission had been supplied when the words were changed in the new Title 28 of the United States Code in section 1332(a) to "all civil actions". The Reviser's Note, however, says that those words "were substituted for 'all suits of a civil nature at common law or in equity' in order to conform to Rule 2 of the Federal Rules of Civil Procedure." That rule reads simply "There shall be one form of action to be known as 'civil action.'" I cannot honestly say that I think that it was intended to enlarge the jurisdiction of the District Courts of the United States.

Since the application for a mandatory injunction to permit Rosen to examine the stock list is not in aid of jurisdiction already acquired but is an independent subject of relief, I am forced to deny it.

The motion for inspection is thus denied.

 Plaintiffs' motion for a mandatory injunction requiring the holding of the stockholders' meeting must be denied. Alleghany's corporate affairs are now in confusion due to the issuance of an injunction by this court freezing the situation where the proposed exchange of 6% preferred stock for 5½% preferred stock has been in part accomplished. Under the circumstances it is difficult to determine who is entitled to vote at such a meeting. Plaintiffs' need for having it held is outweighed by the hardship to Alleghany which would result from requiring that it be held. The present refusal of the injunction is without prejudice to renewal of the motion at any time.

*Plaintiffs' Request for Injunctive Relief With Respect to Defendants' Solicitation of Proxies for the Deferred Annual Stockholders' Meeting Prior to Plaintiffs' Being Afforded the Relief Sought in the Parts of Their Motion Considered Above.*

 Postponement of the holding of the meeting will result in postponement of the mailing of Alleghany's proxy material and consequent postponement of the mailing of plaintiffs' material. Such mailing is plaintiffs' best opportunity for making their views known. It would be unfair to permit Alleghany with its greater facilities for publicity to solicit proxies while plaintiffs are deprived of the use of the mails due to Alleghany's desire to postpone the meeting. Defendants will therefore be enjoined from soliciting proxies until after the date for the meeting has been fixed and plaintiffs have been given a concurrent opportunity to use the mailing facilities of the corporation for that purpose.

It would be unfair to Alleghany to permit plaintiffs to solicit proxies during a period when, at plaintiffs' suit, Alleghany had been enjoined from replying, so plaintiffs will likewise be enjoined for the same period.

There is no reason for a separate injunction against proxy soliciting by de-

fendants pending plaintiffs' examination of the stock list because, if plaintiffs are not sufficiently interested to do their inspecting before the fixing of the date for the holding of the deferred meeting, they should not be allowed to tie the hands of the management thereafter.

*Plaintiffs' Request for Injunctive Relief With Respect to Employment by Defendants of Professional Proxy Solicitors for the Deferred Annual Stockholders' Meeting of Alleghany.*

Plaintiffs seek an order restraining defendants from employing or using The Kissel Organization or any other proxy solicitors for the purpose of soliciting proxies for the election of directors at the deferred annual stockholders' meeting of Alleghany. This branch of plaintiffs' motion is based upon their fourth claim which defendants, in their motion designated "B", move to dismiss on the grounds that this court has no jurisdiction over the subject matter and that the claim fails to state a claim upon which relief can be granted. I shall consider defendants' motion first.

■ Defendants say that plaintiffs' fourth claim does not involve the requisite jurisdictional amount and rely upon the same arguments and cases upon which they relied in support of the part of their motion directed to plaintiffs' second claim.

Plaintiffs' only interest in the question of the employment of professional proxy solicitors is their interest in the cost of the solicitors' services. Any protection that plaintiffs' interest in the corporation requires is adequately afforded by an action at law on the corporation's behalf to recover any unlawful payment. Plaintiffs' infinitesimal share of any possible payment for proxy solicitation could not reach the sum of $3,000.

Plaintiffs say that their whole interest is at stake because they will be unable to tell which votes were obtained by unlawful employment of professional solicitors and which votes are legitimate. The votes obtained by professional solicitors unlawfully paid by the corporation will be quite as legitimate as those obtained by professional solicitors lawfully paid by an outsider.

The claim for an injunction against the use of professional proxy solicitors is dismissed for lack of jurisdiction.

Parts of Defendants' Motion Designated "B" Which Are Still Undecided

*Defendants' Request for a Dismissal of Plaintiffs' Third Claim.*

Defendants seek an order dismissing plaintiffs' third claim on the ground that this court has no jurisdiction over the subject matter. The basis of this motion is the assertion that the jurisdictional amount is not in controversy.

Plaintiffs' third claim realleges all of the paragraphs of the first claim and certain paragraphs of the second claim and alleges that defendant Young has conspired with Alleghany and its officers to prevent plaintiffs from communicating their proxy material to the stockholders of Alleghany and that the Committee has expended monies and incurred obligations in excess of $3,000 the value of which has been lost to plaintiffs by reason of the premises. The first two claims allege wrongs. The third claim alleges a conspiracy to commit that wrong and damages alleged to be in excess of the requisite jurisdictional amount are sought.

■ I am clear that if the Committee, as distinguished from the individual defendants, has standing to sue then the requisite jurisdictional amount is in controversy and defendants' motion must be denied. It will be noted that resolution of this issue in favor of standing to sue will also have the effect of disposing of that part of defendants' motion which seeks an order striking all reference to the Committee from the complaint.

Plaintiffs assert and defendants do not deny that under New York law the Committee is an unincorporated association. Defendants do say that in New York "a committee cannot sue as it is not a juristic entity." However they cite no cases

and make no argument in support of this assertion. The Committee is an organization of persons united for the prosecution of a common enterprise and having no charter. The enterprise in which the members of the Committee are interested is a business purpose. I find no reason for disagreeing with plaintiffs' assertion that the Committee is an unincorporated association. See Gillette v. Allen, 269 App.Div. 441, 56 N.Y.S.2d 307. Under section 13 of the General Associations Law of New York such an association may sue or be sued in its own name. No reason has been advanced why the fact that all members of the Committee are suing, rather than its president or treasurer as provided in the New York statute, should have the effect of making suit in the name of the Committee improper under this law. Without further enlightenment it seems to me that the statutory reference to the president or treasurer of the association was merely an attempt to further convenience. Thus I believe that the Committee has capacity to sue. Under Rule 17 (b), F.R.C.P., it may, therefore, be a party in a suit in this court.

■ The three members of the Committee say that they have lost over $3,000. If they sued as individuals there would be no stated claim that any one had lost $3,000 and thus the jurisdictional amount would be absent. Where, however, they are allowed to sue as an entity, the claim is that the entity has lost over $3,000 and the jurisdictional amount is present.

The result of my belief on this question is that defendants' motion, in so far as it seeks dismissal of plaintiffs' third claim, and excision from the complaint of all reference to the Committee, must be denied.

### Defendants' Motion Designated "C".

*Defendants' Request for a Declaration and Injunction With Respect to Plaintiffs' Proxy Material.*

Defendants seek an order declaring that plaintiffs' proxy material is violative of Rule X–14A–9 of the Regulations of the S.E.C., restraining plaintiffs from causing defendants to mail this material to stockholders of Alleghany and restraining plaintiffs from attempting to communicate by mail or in any other way with stockholders of Alleghany regarding this material.

■ Plaintiffs argue first that the pleading upon which defendants' motion rests was served after service of the order to show cause by which defendants' motion was brought on. This appears to be true and I agree with plaintiffs that no relief can be granted by way of motion absent a plenary proceeding. However here the plenary proceeding has been instituted, by way of counterclaim, and the interests of justice will be best served by considering defendants' motion at this time rather than compelling them to again file the motion.

■ Plaintiffs argue further that defendants' counterclaim is insufficient to support defendants' request by way of motion in so far as it is for a declaration because the only relief prayed for in defendants' counterclaim is injunctive relief. I cannot agree. The counterclaim seeks injunctive relief with respect to plaintiffs' proxy material upon allegations that the material is false and misleading, that is to say, in violation of Rule X–14A–9. A necessary condition of the grant of injunctive relief here must be a finding that the plaintiffs' proxy material is, in fact, violative of the rule. Thus defendants' motion, in so far as it seeks a declaration, merely asks the court specifically to find what it must find anyway before it may grant the other relief which the motion seeks.

■ Plaintiffs contend still further that defendants' counterclaim fails to state a claim because it does not seek, "in so many words, any specific injunctive relief." This contention too is not sound. The counterclaim prays "for injunctive relief." The counterclaim alleges the facts which defendants believe entitle them to relief and alleges that "[d]efendants have no adequate remedy

**868**

at law to prevent (a) the sending of such proxy material violative of the Rules as aforesaid, or (b) the automatic operation of Rule X–14A–7." It is thus quite clear what "injunctive relief" is sought, and the injunctive relief sought by way of defendants' motion is identical with that sought in the counterclaim.

 Passing to the merits, I find that defendants except to plaintiffs' proxy material in forty-four respects. Most of the criticisms are really nothing but the replies that the management would make to the arguments contained in the proxy material. Defendants have not read that material very sympathetically. For instance, in one place, defendants object because plaintiffs tell of a complaint being filed without telling also that an answer has been filed denying the allegations of the complaint, and overlook the fact that the proxy material contains just that information. The vast bulk of the proxy material comes well within the field allowed to minority stockholders in criticising management as laid out by Judge Rifkind in Securities & Exchange Commission v. Okin, D.C.S.D.N.Y., 48 F.Supp. 928, 930. Nevertheless nine of defendants' criticisms are well founded as will hereinafter appear.

On page 1 of the proxy statement it is said that "Alleghany lent the entire purchase price for the I.D.S. shares to the Murchisons, received no cash for the sale, and instead is to be paid back in the form of 4% notes". Defendants say that the notes bore 4½% interest. Plaintiffs point to the Annual Report of Alleghany for 1953, p. 14, as authority for the 4% rate but I shall require plaintiffs to accept defendants' figure.

In another place on page 1 of the proxy statement it is asked "Why were not the I.D.S. shares, instead of the oil shares, deposited as collateral?" An affidavit of the Secretary-Treasurer of Alleghany makes the categorical statement that they were so deposited. Plaintiffs cite the fact that this is the first public disclosure of that information in spite of

the lapse of a month since plaintiffs first made the challenge. Such circumstantial evidence cannot prevail over the officer's oath so the proxy statement must be changed in that respect.

On page 3 of the proxy statement it is said that defendant Young and one Kirby "arranged for Clint W. Murchison and Sid W. Richardson to buy 80,000 shares of the capital stock of the New York Central from the C. & O. on February 24, 1954, at $25 per share". The affidavit of the Secretary-Treasurer says "the statement that Messrs. Young and Kirby arranged for this sale is a lie". In another part of the affidavit the epithet "liar" is applied to one of plaintiffs. The use of such ungentlemanly language would offend the court even if the statement to which it was applied were consciously false. Here plaintiffs cite, as circumstantial evidence that the sale was arranged by Messrs. Young and Kirby, the fact that a report of the I.C.C. Bureau of Inquiry dated March 30, 1954, states that the purchase was initiated by an inquiry from David G. Baird. Plaintiff Phillips swears that Baird is a director of an Alleghany subsdiary and a close personal friend and business associate of Mr. Young and Mr. Kirby and had previously acted for them in many important business transactions. What convinces me, however, that it was not a lie to say that Young and Kirby arranged the sale is a statement in the same affidavit which characterizes it as a lie. In that statement, the affidavit criticizes what it charges to be an imputation that Young, Kirby, Murchison and Richardson had bought New York Central stock for their own account rather than causing Alleghany to buy it. The affidavit asserts that "the reason Alleghany itself had not purchased, but rather asked others to purchase, was that Alleghany did not wish to invest in stock of New York Central unless it could control it." Young and Kirby controlled Alleghany and when it "asked others to purchase" the New York Central stock from C. & O. that constituted the arrangement of the purchase by Young and Kirby. The

proxy material need not be changed in so far as it makes that allegation.

On page 2 of the proxy statement the author asks "why didn't Alleghany's directors insist that Young and Kirby give Alleghany a *bona fide* option to buy" 200,000 shares of Central stock which they purchased? Defendants complain that the statement does not disclose the fact that the directors did not wish to purchase the stock at the time when Young and Kirby bought it. Plaintiffs' only reply is that the public records do not disclose that fact and that defendants have not furnished a copy of any minutes of the directors recording that fact. The statement on behalf of defendants is, nevertheless, categorical and the proxy statement must embody it.

On page 4 of the proxy statement it is stated that there has been no disclosure as to how long a certain guarantee of a joint venture agreement will be in effect. Defendants counter with the statement that plaintiffs know that the guarantee is coterminous with the joint venture. Plaintiffs reply that they do not know how long that is. What the proxy statement should say then is that details as to the duration of the agreement and as to the effect of its expiration have not been disclosed.

On page 6 of the proxy statement there is criticism of a failure to disclose in the April 1950 proxy statements that "the net profits [I.D.S.] for the first three months of 1950 had already reached $2.17 per share". Defendants say that the information was not available at the time the proxy statements were made up. Plaintiffs are unable to cite more than circumstantial evidence to the contrary so the statement must be eliminated.

On page 6 of the proxy statement appear two paragraphs headed "Another $800,000 Possible Profit for Mr. and Mrs. Robert R. Young". The purpose of these paragraphs is not apparent. If they are intended to charge that the Youngs and other holders of the same class of preferred stock profited wrongfully at the expense of the common stockholders it should be so stated and not left to innuendo. Unless such a statement is added the material must be eliminated.

On pages 6 and 7 of the proxy statement there appears discussion of proceedings involving the question of the relative authority of the I.C.C. and the S.E.C. over the security issuing activities of Alleghany and the question of the approval of a preferred stock exchange. There have been developments in these proceedings since the preparation of the statement and it must be brought up to date in those particulars.

On page 7 of the proxy statement Judge Walsh of this court is quoted as saying in an opinion in Breswick & Co. v. Briggs, D.C., 130 F.Supp. 953, 956, "They [the common stockholders] cannot be estopped by management's acquiescence to unauthorized regulation." Something should be added to make it clear that Judge Walsh did not hold that Alleghany's management had acquiesced in unauthorized regulation.

Again on page 7 of the proxy statement it is stated that "members of your committee have instituted an action to stop the exchange offer." Defendants properly point out that only one of the plaintiffs in the action referred to is a member of the committee. The word should be changed to "member".

If plaintiffs' proxy material is amended as above indicated defendants' motion to enjoin its use will be denied, otherwise granted.

Settle order on notice.