Howard MACK, Harry P. Wurman and Howard S. Cullman, individually and as members of the Bayuk Stockholders Protective Committee, Plaintiffs,

v.

E. Archie MISHKIN, Morris L. Wurman and A. Arthur Miller, individually and as proxies on behalf of the present management of Bayuk Cigars, Incorporated and Bayuk Cigars, Incorporated, Defendants.

United States District Court
S. D. New York.

May 5, 1959.

Paul, Weiss, Rifkind, Wharton & Harrison, and Hays, Sklar & Herzberg, New York City, for plaintiffs.

Milton Pollack, New York City, for defendants.

CASHIN, District Judge.

This is a motion by plaintiffs, a dissident stockholders' group, for an order enjoining defendants, the entrenched management group, from continuing the use

of allegedly false and misleading proxy solicitation material, and from using any proxies obtained after the allegedly false and misleading solicitation material was transmitted. The order sought would also adjourn the annual stockholders' meeting scheduled for May 6, 1959 to a date which would permit sufficient time to permit the correction of the allegedly misleading material by the management group and the correction of other charged violations and permit solicitation by the dissident group of the proxies already obtained by management.

Bayuk Cigars Incorporated, the corporation whose future management is in dispute between the parties to this action, is concededly an organization which brings into play the provisions of the Securities Exchange Act of 1934 with reference to proxy solicitation. Section 14 (a) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78n(a)) empowers the Securities and Exchange Commission to prescribe rules and regulations for the solicitation of proxies. The rules and regulations so adopted are contained in Rule 14 of the Securities and Exchange Commission.

On this motion, Rule 14–a–9 defining "False or Misleading Statements", and Rule 14–a–6, defining "Material Required to be Filed" are chiefly the pertinent provisions involved. The principal charges made in support of the relief requested are the use of false and misleading statements. It is not at all charged that the statements made in proxy solicitation material by management are, in themselves, "false and misleading" under the strict dictionary definition of those terms. Rather, it is charged that the solicitation material is subject to censure because it "omits to state * * * material fact[s] necessary to make the statements * * * not false or misleading". It would be useless to attempt to state any broad definition which would enable a mere mechanical application of the definition to a given statement to be determinative of the issue involved. It is useful to note at the outset of the discussion that what

is generally involved in a proxy fight is a bitterly fought contest between groups who have substantial financial interests at stake. The misleading character of statements made must, of course, be judged in such background. Cf. Securities and Exchange Commission v. Okin, D.C.S.D.N.Y.1943, 48 F.Supp. 928, 930, affirmed 2 Cir., 1943, 137 F.2d 862, 148 A.L.R. 1019. Nor can the fact be ignored that in this day and age, when the public is assailed on all sides by propaganda in the political and commercial fields, a fair amount of sophistication can be expected to exist in the general public and, *a fortiori*, in the investing public. Against this background I will examine the allegedly false and misleading statements on which plaintiffs rely.

## I. Market Value of Stock.

In management's letter of April 4, 1959 the following statement appeared:

"In the few short years since October 1, 1956, when the Board of Directors of your company elected E. Archie Mishkin as president, the market value of our stock has appreciated from $17 to $35 a share".

The market price of the stock is, of course, a matter of common knowledge. Thus, the statement in the letter of April 4, 1959 is not charged to be false. Rather, the argument is made by plaintiffs that the statement is within the proscription of Rule 14–a–9 because of the omission of the management to state further that the corporation had made substantial purchase of its own stock, thus removing from the market the so-called "floating supply" of the stock with a consequent increase in market price, and its omission to point out that Bayuk's sales, profit margins and net income figures during the 1955–1958 period had decreased while the same figures for its principal competitors had increased.

The position of the defendants is, in the main, that no material omission was made since soon before the letter of April 4, 1959, the annual statement of the corporation which, of course, had been

transmitted to all stockholders, revealed the company's stock purchases and since in the notices of annual meetings dated April 1, 1957, April 10, 1958 and April 13, 1959, the information had also been given. In addition, defendants point to the fact that plaintiffs themselves contributed to the increase of the market value of the stock by their own purchases of the corporate stock in attempting to take control of the corporation. Both sides, of course, argue at length in both briefs and affidavits as to the likelihood of deception of the stockholders considering the fact that one communication from management emphasized the increase in the market value of stock without pointing up the fact that management had to some extent contributed to the increase by its own stock purchasing activities.

II. Misleading Earnings Statement.

In a letter of April 20, 1959 by management to stockholders, it was stated that the earnings for the first quarter of 1959 were 49¢ per share as against 22¢ per share for the comparable period of 1958. This statement is claimed to be objectionable because the books of the corporation treated a substantial part of the advertising expenses incurred in that quarter as "deferred expense", "prepaid expense", or carried it as inventory. It is admitted by plaintiffs that some explanation was given of this accounting procedure in the solicitation literature but that the explanation was insufficient. It is further argued that the misleading character of the earnings statement was intensified since, in a subsequent advertisement in newspapers and in a press release, the earnings statement was repeated with absolutely no explanation.

Defendants urge that the earnings statement was entirely proper and support their position with an affidavit from the corporation's outside accountants to that effect. Defendants further point out that the letter of April 20, 1959, as well as the press release and advertisement, had the informal approval of the staff of the Securities and Exchange Commission.

III. Failure to disclose action taken with respect to options voted to defendant Mishkin and his associate.

At a directors' meeting on February 27, 1959, the Board, in consideration of extensions of employment agreements by Mishkin, head of management, and an associate, to begin *in futuro*, voted to them stock options at 95% of the market price as of the date of the meeting. The options were to be approved at the annual stockholders' meeting. On March 31, 1959, at a special directors' meeting held after formation of plaintiffs' group, the prior action was rescinded. No statement concerning these actions was made in the proxy statement although Item 7(f) of Schedule 14A calls for a description of any material transaction which the corporation and any of its officers or directors had since the beginning of the last fiscal year. Defendants, of course, argue that since the transaction was completely nullified before a proxy statement was issued, there did not exist a transaction as of the date of the proxy statement. Plaintiffs argue that the making of the agreements and their nullifications were highly material as indicative of the motives of the directors. While certain other alleged misstatements are alluded to in the main affidavit submitted in support of the motion, they are not urged in the memoranda and are in any event too unsubstantial to require discussion since virtually no evidence whatsoever has, as yet, been developed in support of the charges.

In addition to misleading statements, plaintiffs rely on other violations of the proxy rules of the Securities and Exchange Commission. Once again, even though several violations are alluded to in the main affidavit in support of the motion, the memoranda submitted rely upon only two grounds, and I will consider herein only those.

The first ground urged is that management used proxy solicitors who had not filed the statements required by Rule 14–a–11. The charge, however, is based only on "persistent reports" received by the dissidents and one affidavit which is

really at least double hearsay. These grounds are too insufficient to warrant further discussion.

The second violation, other than false and misleading statements charged, is that Mishkin, in a release mailed to stockholders, claimed victory in violation of Rule 14–a–9.* Defendants seek to avoid any adverse effect from the admitted claim by pointing out that there is no absolute prohibition against claiming victory and that, in any event, the release was cleared with the staff of the Securities and Exchange Commission.

I have briefly summarized the rather voluminous allegations made in support of the motion and have also briefly outlined the arguments made by counsel concerning the legal effect of the charged violations. Even this brief summary indicates that there are substantial issues of fact existing, the full resolution of which can only be had upon a full scale trial on the merits.

■ I am aware that there is authority for granting preliminary relief even when such substantial questions remain, (Securities and Exchange Commission v. May, D.C.S.D.N.Y.1955, 134 F.Supp. 247, affirmed 2 Cir., 1956, 229 F.2d 123, 55 A.L.R.2d 1123; Securities and Exchange Commission v. Torr, 2 Cir., 1937, 87 F.2d 446) so long as plaintiffs have made out a prima facie case. However, the plaintiffs seek here to invoke the equitable arm of the court. I do not believe that the general principles which will move a court of equity to act or refrain from acting in a given situation are to be ignored in a suit to enjoin the utilization of proxies allegedly unlawfully obtained.

■ Under these general equitable principles I decline to act in the circumstances before me in this case. The general equitable principles may be restated as follows:

The plaintiffs must show—

(1) that they have a fair chance of success for the ultimate relief sought;

(2) that they will suffer irreparable harm if the preliminary relief is not granted; and

(3) that the harm which would result to the defendants by the granting of the relief sought is commensurate with the harm to plaintiffs which is averted. Foundry Services, Inc. v. Beneflux Corporation, 2 Cir., 1953, 206 F.2d 214; Doeskin Products, Inc. v. United Paper Co., 7 Cir., 1952, 195 F.2d 356; Perry v. Perry, 1951, 88 U.S.App.D.C. 337, 190 F.2d 601.

[4] Plaintiffs have not convinced me of a fair probability of ultimate success. While I am aware that the action of the Securities and Exchange Commission is in no way binding on the Court, I must give some deference to both their action and inaction in the present case. All of the proxy material, including the press release and the newspaper advertisement, utilized by defendants was, in accordance with the generally accepted procedure, submitted to the staff of the Securities and Exchange Commission for prior approval. Presumably, certain changes were required before issuance. I realize that the submission of the material is ex parte in nature, nevertheless, the fact that the staff of the Securities and Exchange Commission has presumably approved the issuance of the material must be given some weight. In addition, with full knowledge of all of the facts presented herein, the Securities and Exchange Commission, although it has jurisdiction to bring an action such as brought by plaintiffs, has not. Cf. Weeks v. Alpert, D.C.D.Mass.1955, 131 F.Supp. 608; Dunn v. Decca Records, D.C.S.D.N.Y.1954, 120 F.Supp. 1.

Apart from the presumed position of the Securities and Exchange Commission, on the basis of my review of the evidence submitted, I have independent-

* Although denominated in the memorandum in support of the motion as a violation of the rules other than relating to false and misleading statements, the charged unlawful claim of victory would, if substantiated, be in derogation of Rule 14–a–9 concerning false and misleading statements.

ly reached the conclusion that at this time plaintiffs have not shown a fair prospect of success. In view of the sharply differing allegations made in the affidavits, especially the conflicting expert testimony, to hold otherwise would be indulgence in mere speculation and conjecture.

Because of the interplay between the second and third considerations set out above, I will discuss them together. Plaintiffs argue that in a motion for a preliminary injunction in a proxy fight, the only irreparable harm which need be shown is that the election will take place with invalid proxies controlling. Defendants contend otherwise. I will prescind from any discussion of this issue of law because I find that the harm which is likely to result to defendants if the injunction is issued and is ultimately proved unwarranted far outweighs the possible harm to plaintiffs in the complementary situation. The issuance of the injunction would undoubtedly come to the attention of the stockholders. No matter how clearly it was indicated that the issuance was in no way a finding on the merits, it would be inevitable that at least a substantial number of stockholders would reach the conclusion that such a holding was tantamount to final determination of wrongdoing on the part of management. If, on the other hand, the preliminary injunction is denied, no comparable harm to the plaintiffs will result.

It seems highly likely that present management will succeed in the impending election. However, if after a full hearing the Court determines that proxies were unlawfully obtained and utilized, the election may be set aside and a resolicitation of proxies with full disclosure and a new election thereon may be had.

The granting of the preliminary injunction thus could well assure plaintiffs of ultimate success in their eventual aim, i.e. control of the corporation. Cf. American Crystal Sugar Co. v. The Cuban-American Sugar Co., D.C.S.D.N.Y.1956, 143 F.Supp. 100. On the relatively skimpy material before me I cannot chance such a result. Plaintiffs argue that there is no authority squarely holding that an election can be set aside. However, Loss on Securities Regulations, an authority extensively cited by plaintiffs, at pp. 551–552, states:

"* * * there seems to be no reason why it [the Securities and Exchange Commission] should not sue in appropriate circumstances to undo the action taken by means of the proxies which have been unlawfully solicited".

I agree with this statement and see no reason why a private party cannot seek and obtain the same relief. Under all of the circumstances I determine that the motion must be and hereby is denied.

It is so ordered.