**AMERICAN CRYSTAL SUGAR COM-
PANY, a corporation, Plaintiff,**

v.

**The CUBAN–AMERICAN SUGAR COM-
PANY, a corporation, Defendant.**

United States District Court
S. D. New York.

Aug. 30, 1956.

Rehearing Denied Oct. 4, 1956.

See also D.C., 19 F.R.D. 396.

Cahill, Gordon, Reindel & Ohl, New York City, for plaintiff, Marshall P. Madison, San Francisco, Cal., Mason A. Lewis, Denver, Colo., Robert G. Zeller, New York City, of counsel.

Appell, Austin & Gay, New York City, for defendant, Cyrus Austin, and Robert L. Loeb, New York City, of counsel.

CASHIN, District Judge.

This is an application for a preliminary injunction enjoining the defendant, the Cuban-American Sugar Company (hereinafter called "Cuban") from acquiring any additional stock of the plaintiff, American Crystal Sugar Company (hereinafter called "Crystal"), from voting its shares of Crystal's stock at any stockholders' meeting, and from acquiring any representation on Crystal's Board of Directors.

This action is brought pursuant to the provisions of Section 7 of the Clayton Act, 15 U.S.C.A. § 18, which, to the extent applicable, prohibits any corporation from acquiring the stock of another corporation if the effect of such acquisition may be substantially to lessen competition in any line of commerce.

The plaintiff, in accordance with the provisions of Section 16 of the Clayton Act, 15 U.S.C.A. § 26, alleges the right to injunctive relief by reason of the irreparable harm that will be caused to plaintiff because of defendant's violation of Section 7. After argument, this motion was submitted on affidavits, depositions and exhibits. No oral testimony was taken and while sharp issues exist as to many facts, the following may be tentatively ascertained from the papers submitted:

1. Plaintiff, Crystal, owns and operates ten factories which manufacture sugar from sugar beet. Crystal's factories are located in the States of California, Montana, Colorado, Nebraska, Iowa and Minnesota. Crystal is the eleventh largest sugar producer in the United States. Its total sales of beet sugar during the past five years averaged ap-

proximately 2.83% of total refined sugar distributed in United States.

2. Defendant, Cuban, is a New Jersey corporation and does not produce or sell sugar directly, but is engaged in the sugar industry through two principal subsidiaries, Colonial Sugar Company (hereinafter referred to as "Colonial") and the Cuban-American Sugar Mills Company, a Cuban corporation which operates raw sugar mills. Colonial is a domestic sugar refiner, owning and operating a cane sugar refinery at Gramercy, Louisiana. Colonial is the twelfth largest sugar producer in the United States. Its total sales of cane sugar during the past five years have averaged approximately 2.43% of total refined sugar distributed in the United States.

3. Crystal sells in fourteen States in which Colonial does not sell sugar. Colonial sells in eight States where Crystal makes no sales. In ten States Crystal and Colonial both sell sugar. In the ten States in which both Colonial and Crystal sell sugar, Colonial's sales have averaged, for the past five years, 5.99% of combined sugar sales of all companies. Crystal's total sales for the same years averaged 7.04% of the total. In only two of these States do the sales of both companies exceed 5% of the total State market.

4. Crystal manufactures and sells only beet sugar. Colonial refines and sells only cane sugar. Traditionally, cane sugar sells at a slightly higher price than beet though there is no difference in their chemical makeup. This higher price is attributable to the household consumers' preference for cane sugar. In turn, beet sugar's lower price makes it more attractive to industrial users for manufacturing purposes. What might otherwise be direct competition in the sugar industry is further modified by Government regulation as provided in the Sugar Act of 1948, as amended 1951, 1956, 7 U.S.C.A. § 1100 et seq. The sugar Act provides for the establishment of basic quotas of domestic and imported sugar, both cane and beet, which may be distributed in the United States.

5. In February of 1954 the defendant began to acquire large blocks of the common stock of the plaintiff. At the present time the defendant owns approximately 21% of plaintiff's voting stock. The defendant has, since as early as 1951, evidenced a purpose to merge with the plaintiff, which purpose it does not categorically disavow even now.

6. On June 12, 1956 plaintiff's present management voted 62% of plaintiff's total outstanding stock for their slate of directors and there is little or no possibility that defendant can obtain voting control, or even representation, on the plaintiff's board of directors prior to the trial of this action. Plaintiff, at the time this motion was filed on March 20, 1956, maintained that unless it was granted a temporary injunction it would suffer irreparable harm by reason of the fact that the defendant, through its control of a large percentage of plaintiff's stock, would obtain representation on or control of plaintiff's board of directors at the next annual meeting of stockholders on June 12, 1956. Plaintiff still claims irreparable harm from this source for next year and, in addition, generally claims that defendant's purchase of its stock undermines the morale of its employees; seriously complicates the making of plans for future operation and adversely affects plaintiff's relationship with its brokers and suppliers.

The only question presented by this motion is whether or not plaintiff has sustained its burden of showing that there is a reasonable probability that defendant's conduct is unlawful under Section 7 of the Clayton Act. The sufficiency and degree of proof required to sustain that burden and justify the issuance of a temporary injunction, however, are governed to an extent by the immediacy of the threatened harm to the plaintiff. Hamilton Watch Co. v. Benrus Watch Co., D.C., 114 F.Supp. 307, affirmed 2 Cir., 206 F.2d 738.

It is the Court's opinion that on the facts in this case the immediacy of harm and irreparable damage to the

plaintiff is so remote as to require a very clear showing that defendant's stock acquisitions violate Section 7 of the Clayton Act. The plaintiff here has failed to make such a showing.

Plaintiff claims that its product, beet sugar, is in direct competition with defendant's product, cane sugar. The defendant contends the competition is modified by price differential and type of consumer. Plaintiff claims substantial competition in certain states and sections of the country. Defendant claims its areas of distribution actually overlap plaintiff's to a very slight degree. There are also inconsistent and contradictory claims as to the effect the Government Quota System has on competition. The result is that the record before this Court leaves much that is uncertain concerning issues which may well be decisive on the final determination of this case.

If the Court were convinced of immediacy of harm to the plaintiff it would be inclined to grant plaintiff's motion, at least in part, on its initial showing of "quantitative substantiality". However, since the Court is not so convinced and feels certain that the only purpose a preliminary injunction would now serve would be to give the plaintiff a decided advantage in this litigation in advance of a full trial of the issues with corresponding disadvantages to the defendant, the motion is denied.