**E. L. BRUCE COMPANY, Plaintiff,**

v.

**EMPIRE MILLWORK CORPORATION,**
Rhodes Hardwood Flooring Corporation, Edward M. Gilbert, Harry Gilbert and Yolan Gilbert, Defendants.

United States District Court
S. D. New York.
July 30, 1958.

Lord, Day & Lord, New York City, Thomas F. Daly and Wm. Barnabas McHenry, New York City, of counsel, for plaintiff.

Shearman & Sterling & Wright, New York City, Robert L. Clare, Jr., MacIlburne Van Voorhies, Michael J. DeSantis, New York City, of counsel, for defendants Empire Millwork Corp., Rhodes Hardwood Flooring Corp., Harry Gilbert and Yolan Gilbert.

Javits & Javits, New York City, Thomas Field, New York City, of counsel, for defendant Edward M. Gilbert.

LEVET, District Judge.

Plaintiff in this action moves for an order pursuant to Rule 65 of the Federal Rules of Civil Procedure, 28 U.S.C.A., to enjoin the defendants, their officers, directors, agents, etc., from (A) taking any further action towards the consummation of the acquisition of the plaintiff; (B) from making any changes, directly or indirectly, in the corporate structure of the plaintiff; (C) from directly or indirectly voting the defendants' shares of common stock of the plaintiff at any meeting of the plaintiff's stockholders; (D) from acquiring any direct or indirect representation on the board of directors of the plaintiff; (E) from acquiring any additional shares of common stock of the plaintiff; (F) for such other and further relief as to the court may seem just and proper.

The alleged basis of this action is Section 7 of the Clayton Act, Title 15 U.S.C.A. § 18, as amended by the act of Congress of December 29, 1950, presum-

ably as implemented by Title 15 U.S. C.A. § 26.

Section 18 of Title 15 U.S.C.A. is in part as follows:

"No corporation engaged in commerce shall acquire, directly or indirectly, the whole or any part of the stock or other share capital and no corporation subject to the jurisdiction of the Federal Trade Commission shall acquire the whole or any part of the assets of another corporation engaged also in commerce, where in any line of commerce in any section of the country, the effect of such acquisition may be substantially to lessen competition, or to tend to create a monopoly."

Section 26 of Title 15 U.S.C.A., insofar as it is here pertinent, reads as follows:

"Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the anti-trust laws, including sections 13, 14, 18, and 19 of this title, when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue * * *"

### Plaintiff's Claims

Plaintiff, E. L. Bruce Company, hereinafter referred to as "Bruce," is a corporation of the State of Delaware, with its principal offices in Memphis, Tennessee. It is said to be a publicly-held corporation, with an excess of 300,000 shares of common stock issued and outstanding. Plaintiff claims to be the world's largest distributor of hardwood flooring, as well as a leading producer and distributor of Southern hardwood and soft wood lumber and other products.

The defendant Empire Millwork Corporation, hereinafter referred to as "Empire," is the leading producer and distributor of millwork lumber and plywood. Rhodes Hardwood Flooring Corporation, hereinafter referred to as "Rhodes," is a wholly-owned subsidiary of Empire and a national distributor of hardwood flooring. The defendants Edward M. Gilbert, Harry Gilbert and Yolan Gilbert are alleged to be in control of Empire, owning at least 60% of its voting stock. Thus it is contended that since Rhodes is wholly owned by Empire, the Gilberts control both corporations.

Edward M. Gilbert, who is an officer and director of Empire and Rhodes, is said to be one of the leaders of the proposed acquisition of Bruce.

Empire controls a number of subsidiary companies, but these appear to be largely timber ownership (rather than production), retail lumber companies, millwork companies and realty or development companies. (See Exhibit A attached to motion papers)

Plaintiff contends that it is in vigorous and continual competition with Empire and Rhodes in the sale and acquisition of hardwood flooring and in other products. Hardwood flooring is produced from oak or other hardwood lumber, and oak is said to be the species predominantly used. The majority of hardwood flooring sold in the United States is oak. The actual production of hardwood flooring takes place in a flooring mill where rough oak lumber is cut and planed to lengths of flooring. It is necessary to have on hand a large inventory of hardwood flooring with a number of different grades and sizes. Only through warehousing large inventories of flooring is it possible to make immediate delivery of the desired grade and size.

Plaintiff asserts that both it and Rhodes have sales structures which per-

mit competition nationally in the sale and distribution of their products and thus are said to compete. Among the areas where competition is evident is San Francisco Bay and the suburban area of Los Angeles, California.

The defendant Empire is said to have a 50% interest in a contracting firm based in Dallas, Texas, to wit, Dicker, Frank & Associates. Bruce sells, it is stated, at least 65,000,000 board feet per year of hardwood flooring, which is said to be 8% of the industry's total.

Rhodes, it is claimed by plaintiff, sold in excess of 40,000,000 board feet of hardwood flooring in 1957, which plaintiff states is approximately 5% of the industry's total sales, the dollar value of which was $6,700,000.

Plaintiff claims that the Gilberts in their own name or through Empire in recent years have sought to acquire control of the plaintiff. Empire and the Gilberts are buying shares of Bruce's stock on the market for the admitted purpose of controlling Bruce.

Plaintiff in the reply affidavit of Walter J. Wood, Vice President, sworn to July 24, 1958, alleges that in 1957 sales by it and Rhodes were as follows:

|  | Board Feet | Percentage of Total Market |
| --- | --- | --- |
| Bruce | 48,843,000 | 5.44% |
| Rhodes | 36,948,000 | 4.12% |
| Total |  | 9.56% |

Including prefinished flooring:

|  | Board Feet | Revised Percentage |
| --- | --- | --- |
| Bruce | 23,171,000 | 8.03% |
| Bruce and Rhodes combined |  | 12.14% |

The only threatened injuries which the plaintiff fears now are:

(1) E. L. Bruce, Jr., at page 11 of his affidavit states in substance that the effect of the acquisition by the corporate defendants of Bruce's common stock if permitted to stand *may be* substantially to lessen competition;

(2) The threat of defendants' representation upon or control of plaintiff's board of directors presents serious problems to Bruce in plans for personnel and for future operations. (Affidavit of E. L. Bruce Jr., page 12.)

Defendants' Contentions

The defendants contend:

(1) That the plaintiff's moving papers fail to establish that the effect of the acquisition of control of the plaintiff by any or all of the defendants "may be substantially to lessen competition" in the hardwood flooring market, or soft wood market, or in any line of commerce.

To sustain this contention the defendants say there is no evidence to show:

(a) The extent of the hardwood flooring market; or

(b) The portion of that market controlled by plaintiff; or

(c) The portion of that market controlled by the corporate defendants.

The defendants state that if the entire product of Bruce (a manufacturer) and Rhodes (a sales organization) were assumed to be now sold in competition, a combination of the two companies would control only 6.8% of the total market as against the preceding condition when plaintiff has less than 4.1% and Rhodes less than 2.9% of the total market; that Bruce is only one of more than 170 substantial manufacturers of hardwood flooring. Empire does not manufacture or sell hardwood flooring.

In paragraph 17 (page 9) of the affidavit of Edward M. Gilbert, sworn to July 22, 1958, he states:

"Rhodes is only one of a great many distributors of hardwood flooring in the United States. It is not one of the two largest sellers of hardwood flooring as alleged in the moving papers. The sales figures of all sellers of hardwood flooring are not available but based upon investigations I have recently made, to the

best of my knowledge and belief, hardwood flooring sales were made by the following companies in the year 1957 in the following amounts:

| Company | | | | | |
|---|---|---|---|---|---|
| "Arkansas Oak Flooring Company | 40,000,000 | board | feet | unfinished | strip |
| "Bradley Lumber Company of Arkansas | 36,082,000 | " | " | " | " |
| "Harris Manufacturing Company | 35,000,000 | " | " | " | " |
| "Southern Lumber Company (which recently acquired Bradley) | 6,000,000 | " | " | " | " |
| "Cloud Oak Flooring Company | 20,841,000 | " | " | " | " |
| "Longbell Lumber Company | 20,000,000 | " | " | " | " |
| "D. L. Fair Lumber Company | 12,453,000 | " | " | " | " |
| "Crossett Lumber Co. | 12,924,160 | " | " | " | " |
| "Olin Mathieson Chemical Corporation; Forest Products Division | 12,896,000 | " | " | " | " |
| "Partee Flooring and Louisville Flooring—joint ownership | 12,000,000 | " | " | " | " |
| "Southern Pine Lumber Company | 11,744,000 | " | " | " | " |
| "DeSoto Hardwood Flooring Company | 11,152,000 | " | " | " | " |
| "Fordyce Lumber Company | 9,229,000 | " | " | " | " |
| "King Lumber Industries | 9,000,000 | " | " | " | " |

"There are many other smaller producers and probably other larger ones, whose total annual production represents a substantial proportion of the total annual hardwood flooring production but there has not been sufficient time to make a more complete market survey."

In his affidavit sworn to July 24, 1958, Walter J. Wood, the plaintiff's Vice President, disputes a number of the sales figures quoted above. He states that in 1957 Arkansas Oak Flooring Company sold 34,038,000 board feet of unfinished strip hardwood flooring rather than 40,000,000 as claimed by the defendants; that Harris Manufacturing Company sold only 18,961,000 board feet in 1957 rather than 35,000,000 board feet as defendants estimate; and that Longbell Lumber Company sold only 15,-125,000 board feet in 1957 rather than 20,000,000 board feet as defendants assert. Based on the foregoing, Mr. Wood concludes that the defendant Rhodes is in fact second only to Bruce in the sales of unfinished strip hardwood flooring.

Whatever the precise figures may be, it is clear that defendants' contention that Rhodes is only one of a great many distributors of hardwood flooring in the United States is essentially sound.

(2) Defendants further assert that Empire owns or has subject to contract or option agreements an aggregate of only 33,256 shares of Bruce stock out of a total of 314,600 shares outstanding;

(3) That plaintiff has failed to establish that immediate and irreparable injury will be sustained by it from any alleged acts or threatened acts of defendants. In this connection the defendants point out that the next annual meeting of plaintiff's stockholders is scheduled for October 28, 1958;

(4) That issuance of a preliminary injunction could subject Empire to substantial damages due to contracts in which it has engaged to purchase Bruce stock, as well as possible losses if a certain option to buy is not exercised.

This court has carefully considered the 1950 amendments to Section 7 of the Clayton Act, which in certain respects effected a liberalization of that statute. However, even under the statute as amended, a plaintiff in order to be entitled to injunctive relief must show the existence of a reasonable probability that the threatened acquisition will be effective to substantially lessen competition. As was stated by Judge Hincks in Hamilton Watch Co. v. Benrus Watch Co., D.C.D.Conn.1953, 114 F.Supp. 307, affirmed 2 Cir., 1953, 206 F.2d 738;

> "The language of Section 7 of the Clayton Act as amended whereby the ban on stock acquisitions was limited to those the effect of which 'may be' substantially to lessen competition should be interpreted as restricted to acquisitions which by a *reasonable probability* will be effective substantially to lessen competition." 114 F.Supp. at page 315.

The Hamilton Watch case, supra, is not similar in facts to the present case. (1) There Hamilton's sales were 11% of the dollar volume of the aggregate sales of branded jeweled watches in the United States by firms having any nation-wide advertising; Benrus sales were 9½% of such dollar volume. Here, the aggregate sales of Bruce and Rhodes occupy only 12% of the hardwood flooring market; (2) The "Big Six" of the watch industry (Elgin, Bulova, Benrus, Longines-Wittnauer, Hamilton and Gruen) accounted for about 90% of such sales. On the other hand, there appear to be approximately 170 producers of hardwood flooring in the United States, and Bruce, which is alleged to be the industry leader, accounts for only 8% of the total sales volume.

Judge Hincks in granting a preliminary injunction in the Hamilton Watch case, supra, expressly found that:

> "Control of Hamilton by Benrus under the facts shown here would have been effective substantially to lessen competition in the jeweled watch industry within the meaning of Sec. 7 of the Clayton Act, as amended.
>
> \*　　\*　　\*　　.　　\*　　\*
>
> "The defendant's present purpose to vote its Hamilton stock in Hamilton's forthcoming annual meeting, if accomplished, will probably be effective substantially to lessen competition.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "A preliminary injunction should be granted to prevent irreparable damage to the plaintiff which plainly outweighs any foreseeable harm to the defendant." 114 F.Supp. at page 315.

The case of American Crystal Sugar Company v. Cuban-American Sugar Company, D.C.S.D.N.Y.1957, 152 F.Supp. 387, does not support plaintiff's position on this motion since an application for a preliminary injunction was there denied. See American Crystal Sugar Company v. Cuban-American Sugar Company, D.C.S.D.N.Y.1956, 143 F.Supp. 100, wherein Judge Cashin in denying plaintiff's motion for a preliminary injunction stated:

> "The only question presented by this motion is whether or not plaintiff has sustained its burden of showing that there is a reasonable probability that defendant's conduct

is unlawful under Section 7 of the Clayton Act. * * *

" * * * The plaintiff here has failed to make such a showing." 143 F.Supp. at pages 101–102.

I, therefore, conclude:

(1) That plaintiff has failed to show that Section 7 of the Clayton Act (Title 15 U.S.C.A. § 18) has been or is about to be violated since there is insufficient evidence to indicate a reasonable probability that competition in the hardwood flooring industry will be substantially lessened;

(2) That plaintiff has failed to show a present danger of irreparable loss or damage requisite for the issuance of a preliminary injunction. See Hamilton Watch Co. v. Benrus Watch Co., Inc., 2 Cir., 1953, 206 F.2d 738, 743; Fein v. Security Banknote Co., D.C.S.D.N.Y. 1957, 157 F.Supp. 146, 148.

Accordingly, the motion is denied.

So ordered.