The American Hardware Corporation, a Connecticut corporation, and B. S. F. Company, a Delaware corporation, Plaintiffs-Appellants,

*vs.*

Savage Arms Corporation, a Delaware corporation, Defendant-Appellee.

*Supreme Court on Appeal, December 10, 1957.*

Before SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, JJ.

*S. Samuel Arsht,* of Morris, Steel, Nichols & Arsht, Wilmington, for appellants.

*Aaron Finger,* of Richards, Layton & Finger, Wilmington, and *Edward K. Bachman,* of Kelley, Drye, Newhall & Maginnes, New York, for appellee.

SOUTHERLAND, Chief Justice: Plaintiffs are stockholders of the defendant, Savage Arms Corporation, a Delaware corporation. They sought in the court below to restrain Savage from transacting any business at a meeting of stockholders of Savage called for November 15, 1957, except to adjourn it to a date to be fixed by the court. The Chancellor denied relief. *Ante p.* 10, 135 *A.2d* 725. He also refused to issue an injunction pending appeal. Plaintiffs appealed, and applied to this Court for such an injunction.

Because the disposition of the application would be in effect a decision on the merits, the matter was heard by all the justices of this

Court. On November 13 we denied the application, and advised counsel that an opinion would be filed later. This is our opinion upon the matter.

Savage is a Delaware corporation engaged in the business of manufacturing firearms and other products. Within the past year or so plaintiffs acquired about 13% of its common stock. Their purpose was apparently to bring about a merger of American Hardware and Savage. During 1956 they made suggestions or proposals to this effect. The Savage management was not interested.

In September, 1957, the Savage board of directors authorized the purchase by Savage, for shares of its own stock, of stock of Aircraft Armaments, a Maryland corporation engaged in applied research in fields related to armaments. Consummation of the purchase was conditioned upon approval by the Savage stockholders, and a special stockholders' meeting was called. It was first tentatively set for November 22, 1957, but finally set for November 15. Notice of the meeting and the proxy statement were mailed October 30, 1957. The Savage by-law requires ten days' notice of a special meeting of stockholders.

In the meantime American Hardware had determined to make an offer to the Savage stockholders to exchange its stock for shares of Savage stock. It is said that the management of Savage knew of this intention as early as August. A registration statement covering this offer was filed with the Securities and Exchange Commission on or about November 4.

On October 31 plaintiffs filed the present suit. They sought an adjournment of the meeting and an injunction against the use of the management proxies. On November 1 they commenced a proxy solicitation in opposition to the management. They asserted that the acquisition of Aircraft would be an improvident transaction, but do not in this suit attack it as invalid.

In support of their case for an adjournment plaintiffs made four points:

1. They first contended that the meeting should have been adjourned to enable American Hardware to submit to the Savage stock-

holders its exchange offer. That offer, plaintiffs said, should have been before the Savage stockholders when they voted on the proposed acquisition of Aircraft Armaments, since it might, it was argued, have influenced their decision on the acquisition. This offer could not be made until a date after November 15.

■ This argument we cannot follow. The proposed exchange of American Hardware stock with the individual Savage stockholders has nothing to do with the acquisition of Aircraft Armaments. The two are not necessarily incompatible. Plaintiffs' argument comes to this, that a meeting legally and duly called for the consideration of a proposed plan for the purchase of certain assets should be adjourned by court order to enable an objecting stockholder to submit to the individual stockholders a wholly unrelated plan. No authority for this proposition was cited. Certainly there is none in this State. To approve it would be to encourage tactical manoeuvers designed to confuse and to interfere with legal corporate procedure. This contention we accordingly rejected.

2. Plaintiffs next contended that the notice of the meeting was unreasonably short, and that the court should therefore adjourn it. It was not contended that the ten-day by-law is unreasonable on its face. But it was said that because objecting stockholders were conducting a proxy fight, and because one-third of the outstanding shares were held in brokers' accounts, the time allowed for all the stockholders to receive and consider the opposition proxy material was insufficient. The rules of the New York Stock Exchange, on which Savage stock is listed, forbid the broker in case there is a contest to vote shares of stock held for account of his customer without instructions from the beneficial owner. This takes time, and the time allowed here—sixteen days—was said to be unreasonably short.

■ The answer to this point is simple. Under the General Corporation Law, no one but a registered stockholder is, as a matter of right, entitled to vote, with certain exceptions not pertinent here.[1] *In re Chilson,* 19 *Del.Ch.* 398, 408, 168 *A.* 82. If an owner of stock

---

1. No contention was made that the beneficial owners of shares held in brokers' accounts (presumably in "street names") were entitled to vote as pledgors under § 217 of the General Corporation Law, 8 *Del.C.* § 217.

chooses to register his shares in the name of a nominee, he takes the risks attendant upon such an arrangement, including the risk that he may not receive notice of corporate proceedings, or be able to obtain a proxy from his nominee. The corporation, except in special cases, is entitled to recognize the exclusive right of the registered owner to vote. Cf. 8 *Del.C.* § 183. It has been held in this State that an unregistered stockholder may not dissent from a merger and demand appraisal of his stock. *Salt Dome Oil Corp. v. Schenck,* 28 *Del.Ch.* 433, 41 *A.2d* 583, 158 *A.L.R.* 975. The rule of the Exchange is no doubt a salutary one, but it has no bearing upon this case. The corporation has ordinarily discharged its obligation under Delaware law when it mails notice to the record owner.

■ We understand plaintiffs also to contend that, the question of beneficial stockholders apart, the existence of a proxy contest is a circumstance which should induce the Court to adjourn the meeting to give additional time for solicitation of the stockholders and for their consideration of the respective contentions of the management and the opposition. It is suggested that, although a ten-day notice is not in itself unreasonable, yet if there is a contest the burden is thrown on the management to justify the reasonableness of the notice. *Gries v. Eversharp, Inc.,* 31 *Del.Ch.* 489, 69 *A.2d* 922, is cited. In that case the directors postponed the annual meeting one week, and gave thirteen days' notice of the change. The court held that the adjourned meeting was one called under § 222 (formerly § 30) of the General Corporation Law. The court then drew an analogy from the provision of § 222 requiring twenty days' notice of a change in the by-law fixing the time of the annual meeting, and held that the burden was on the management to sustain the reasonableness of the thirteen days' notice. That decision, we think, is inapplicable here. This is no case of disregard of the by-law; the by-law was complied with. If plaintiffs' argument were accepted, the courts could be required, in every case such as this, to override the by-law (usually adopted by the stockholders themselves), and fix the length of the notice. Presumably, as here, a sharp conflict of fact would be presented and would have to be resolved. It needs little consideration to realize that the adoption of this view would import serious confusion and uncertainty into corporate procedure. There is nothing unusual about a ten-day

notice provision. For example, the General Corporation Law itself requires only ten days' notice of a stockholders' meeting called to consider an amendment to the charter (§ 242) or a reduction of capital (§ 244). In our opinion, the circumstance of a proxy contest in itself furnishes no sufficient reason for the courts to interfere. Moreover, in the instant case, it did not appear that the objecting stockholders lacked sufficient time to solicit support for their position. They acted promptly, and mailed two letters on November 1 and November 5. Other letters, we were advised, were later sent.

We find nothing of substance in this contention.

3. Plaintiffs next contend that the defendant used unfair and delaying tactics, and impeded the plaintiffs in their effort to solicit the stockholders in opposition to the management proposal.

First, it is said that the defendant refused inspection of the stockholders' list, and was dilatory in supplying certain financial and other information. The list and the information were required to enable plaintiffs to complete the registration statement relating to their proposed exchange offer. As we have already said, this was a matter wholly unrelated to the meeting. Hence, the defendants' delay, if it existed, could not justify an adjournment of the meeting. The case of *Steinberg v. American Bantam Car Co.*, D.C., 76 F.Supp. 426, is therefore not in point.

Second, it is said that defendant failed to comply with Rule X-14A-7-b(1) of the proxy rules of the Securities and Exchange Commission. This rule requires the issuer (in this case Savage) to mail to a broker who is the registered but not the beneficial owner a sufficient number of the proxy statements furnished by the security holder (the opposition) as will enable the broker to furnish a copy to each beneficial owner. Plaintiffs contended that the management did not comply with this rule. The management contended to the contrary.

The answer to this question is obvious. Whether or not there has been non-compliance with the proxy rules of the Commission is

an issue to be determined solely by the Commission itself and the federal courts. The courts of this State will not assume to trespass upon this exclusive jurisdiction. *Standard Power & Light Corp. v. Investment Associates, Inc.*, 29 *Del.Ch.* 593, 606, 51 *A.2d* 572. This connection we declined to entertain.

■ 4. It was finally contended that the management proxy statement was false and misleading. It appears that four of the eleven directors of Savage had dissented from the proposed acquisition of Aircraft Armaments. They either voted against the resolution of approval, or advised the management of their opposition to it. The proxy statement contains the following paragraph:

> "At their August 1957 meeting all of the Directors of Savage Arms, including Richard Balch, unanimously authorized the President to negotiate, at a price not to exceed 115,000 shares of Savage Arms stock, for the acquisition of Aircraft Armaments which the Board had had under consideration since early 1957. At their September meeting the Board approved the acquisition, for 110,000 shares of Savage Arms stock, subject to approval by the stockholders. At this meeting Mr. Balch voted against the acquisition but stated he might not have voted against it had action been deferred for two weeks. Although absent from the October meeting, Mr. Balch asked the Board to rescind their motion approving the acquisition. After consideration, the Board again voted in favor of the acquisition."

Plaintiffs argued, with considerable force, that this statement might well carry the implication that only one director opposed the proposed action. We agree with the Chancellor that it would have been preferable to state all the facts; but we did not consider that the matter justified an adjournment of the meeting. In the first place, the limited nature of the statement appears to be attributable to the limited scope of the applicable proxy rule of the Commission. That rule reads:

> "Give the name of any director of the issuer who has in-formed the management in writing that he intends to oppose any

action intended to be taken by the management and indicate the action which he intends to oppose."

This rule seems to be directed only to cases of written objection by directors and to cases of active opposition—not to mere dissent from the action of the majority. Only one Savage director filed such written objection. The Commission's staff was advised that four directors dissented, but required no further disclosure. Moreover, it appears that the opposition, in its first letter to the stockholders, referred to the fact that the proposal was adopted by a split vote. This may not be in itself a complete answer to the charge of a misleading statement. An assertion by an objecting stockholder is one thing; admission of the fact by the management itself is another. But it is a fact that the stockholders had been advised of a division of opinion in the board. This circumstance, coupled with the limited requirement of the Commission's rule, justified the conclusion that the ommission in the management proxy statement was not of such grave importance as to require the court to adjourn the meeting.

For the foregoing reasons, we declined to grant plaintiffs' application.

One further point must be noticed. After the filing of the appeal in this Court, both parties filed with us additional affidavits, embodying to some extent matter not presented to the court below. In the absence of any objection, we received and considered these affidavits.

Since the application before us was not for a stay but for an injunction pending appeal, it is possible that the submission of such new matter might be proper. We did not, however, pass upon the propriety of this practice, and we expressly decline in this case, to express any opinion upon the point.