## The SUSQUEHANNA CORPORATION
### v.
### GENERAL REFRACTORIES COMPANY,
D. Emmert Brumbaugh, Harry T. Graham, John E. Hartshorn, Arthur F. Kroeger, David Remer and William B. Walker.

### Civ. A. No. 39616.

United States District Court
E. D. Pennsylvania.

Feb. 14, 1966.

Dechert, Price & Rhoads, by H. Francis DeLone, Philadelphia, Pa., for plaintiff.

Montgomery, McCracken, Walker & Rhoads, by Sidney L. Wickenhaver and Thomas N. O'Neill, Philadelphia, for defendants General Refractories, Harry T. Graham and John E. Hartshorn.

JOSEPH S. LORD, III, District Judge.

This is a suit by a stockholder against its corporation and directors. Jurisdiction is predicated solely upon diversity of citizenship. On January 27, 1966, I entered an order enjoining the defendants from holding a stockholders meeting to consider a proposed transaction which plaintiff shareholder opposes unless defendants furnished to plaintiff in advance of the meeting the list of stockholders which plaintiff had demanded. The terms of the order are set out in the margin.[1]

Plaintiff's amended complaint at that time consisted of two counts. The first count alleged that the proposed transaction, the acquisition of the Mining and Mineral Products Division of Great Lakes Carbon Corporation, was entered into by a procedure which violated the corporate bylaws and by a breach of the fiduciary duty of the directors, and would result in the wrongful dilution of plaintiff's stock in the defendant corporation. The second count, incorporating

---

1. "And now, January 27, 1966, upon consideration of the complaint, the amended complaint, defendant's motion to dismiss, briefs and oral argument, it is ordered as follows:

"1. Defendants' motion to dismiss is denied.

"2. Defendants are enjoined from holding a stockholders' meeting to consider the purchase by defendant General Refractories Company of the assets of the Mining and Mineral Products Division of Great Lakes Carbon Corporation unless (a) defendants shall furnish to plaintiff a stockholders list not later than twenty (20) days in advance of any such meeting, and not later than seven (7) days before defendants transmit to the shareholders of General Refractories Company any proxy material; or (b) defendants shall file an answer to the amended complaint within five (5) days from the date hereof.

"3. The depositions heretofore noticed by plaintiff are stayed until further order of the court.

"4. Plaintiff's other requests for relief are refused."

the allegations of the first, alleged plaintiff's repeated request for a list of the corporation's stockholders to enable plaintiff to communicate with other stockholders concerning the transaction. The prayer of the first count requested, in effect, an injunction against the consummation of the proposed transaction. The prayer of the second count requested that plaintiff be allowed to examine and make extracts from defendant's share register and that defendants be enjoined from soliciting proxies for the forthcoming meeting to consider the Great Lakes Carbon transaction.

At that time, defendants had moved to dismiss plaintiff's complaint because of (1) prematurity of the first count, (2) failure to state a claim in the first count on which relief could be granted, and (3) lack of independent jurisdiction to grant the relief prayed for in the second count. Believing plaintiff's complaint to be premature in all respects except the demand for the stockholders list, I did not reach defendant's second ground for dismissal of the first count, viz., failure to state a claim on which relief could be granted. The relief plaintiff asked for in its first count was accordingly denied. Defendants' attack on the second count rested on the want of jurisdiction to issue a writ in the nature of mandamus except in aid of other federal jurisdiction. Covington & Cincinnati Bridge Co. v. Hager, 203 U.S. 109, 27 S.Ct. 24, 51 L.Ed. 111 (1906); Hertz v. Record Pub. Co., 219 F.2d 397 (C.A.3, 1955), cert. denied, 349 U.S. 912, 75 S.Ct. 601, 99 L.Ed. 1247 (1955); Newark Morning Ledger Co. v. Republican Co., 188 F.Supp. 813 (D.Mass.1960); Mac Neil Bros. Co. v. Williams, 137 F.Supp. 687 (D.Mass.1956); Rosen v. Alleghany Corp., 133 F.Supp. 858 (S.D.N.Y.1955).

I concluded, however, that the holding of a meeting to consider the transaction in question without giving plaintiff access to the stockholders list would constitute a separate wrong which would result in irreparable injury. For that reason, I denied the motion to dismiss and issued, not an order in the nature of mandamus, but the conditional injunction alluded to and set out above. I adopted the reasoning of Judge Gourley in Steinberg v. American Bantam Car Co., 76 F.Supp. 426, 436–437 (W.D.Pa. 1948), appeal dismissed as moot, 173 F. 2d 179 (C.A.3, 1949):

"As far as the internal affairs of a corporation are concerned, I am aware that the Court should only intervene when necessary to secure a free and full explanation, and an accurate record of the will of the stockholders on the subject in question. It appears to me that the election of directors for the defendant company, under the circumstances which exist in this case, is vital and of the greatest importance to the future welfare of this company. The election of the directors should be orderly and with a full and complete opportunity for a participation of all the stockholders after being fully informed and advised as to the detailed facts and circumstances which exist as to the affairs of the company.

"I believe the Court in the exercise of its equitable powers should make positive that a fair and representative meeting should be made available to choose the directors of Bantam by the stockholders of said company.

"In view of the barriers which have confronted the plaintiff in securing the names and addresses of the company's stockholders, such a meeting could not be held without the aid of injunctive relief.

"The Corporation Act in Pennsylvania affords minimum safeguards for the protection of the rights of shareholders in a corporation, but the Legislature recognized that situations might arise where some additional relief would be required to protect the interests of shareholders.

"This is best exemplified in Section 6 of the Corporation Act where-

in it is provided that 'This act shall not be deemed to curtail in any manner whatsoever the law or equity jurisdiction of the courts of this Commonwealth.' 15 Purdon's Penna.Statutes Annotated, § 2852—6."

My purpose was to insure, without interfering with the business judgment of the directors or stockholders, "a free and full expression of the will of the stockholders." Id. at 441.

Plaintiff then returned to the court with a second amended complaint, the filing of which defendants oppose. Plaintiff asked, consonant with the aim of holding a fair meeting, that defendants be further enjoined from holding a meeting to consider the transaction unless they permit plaintiff to inspect certain books and records of the corporation, in order to allow plaintiff to gather material with which to evaluate and inform other stockholders of the merits of the proposed transaction. After hearing, argument and full consideration of defendants' objections to the filing of the second amended complaint stating a third cause of action, I have decided to dismiss defendants' objections and grant plaintiff the relief to which it is entitled under state law.

The essential questions presented by this complex litigation are jurisdiction, rights under state law, and the appropriate relief. Their resolution follows.[2]

■■ At this stage, since defendants have not received their proposed proxy statement with comments from the Securities & Exchange Commission, there is no allegation of a breach of the proxy rules or of any other federal law. The only threatened wrong exists because of state law. Yet this court has jurisdiction over the subject matter by virtue of diversity of citizenship. That jurisdiction extends to an injunction action of this character, and this court is bound to apply state law. The amount in controversy is the value of plaintiff's stock or at any rate the threatened loss to plaintiff from the transaction, which in this case, the evidence shows, far exceeds the jurisdictional amount. Textron, Inc. v. American Woolen Co., 122 F.Supp. 305 (D.Mass.1954); Rosen v. Alleghany Corp., supra; cf. Steinberg v. American Bantam Car Co., supra.

■ Plaintiff's rights are governed by the law of Pennsylvania. The Pennsylvania courts have been generous in allowing minority stockholders access to stockholders lists and corporate books. See Goldman v. Trans-United Ind., Inc., 404 Pa. 288, 171 A.2d 788 (1961); Hagy v. Premier Mfg. Corp., 404 Pa. 330, 172 A.2d 283 (1961). Section 308, subd. B of the Business Corporation Law, 15 P.S. § 2852–308, subd. B, allows "[e]very shareholder" the right to examine "at any reasonable time or times, for any reasonable purpose, the share register, books or records of account, and records of the proceedings of the shareholders and directors, and make extracts therefrom." The fact that plaintiff has an interest in a competing corporation, as plaintiff has here, does not deprive it of its right to inspect and extract, unless defendants can show bad faith or improper purpose. Hagy v. Premier Mfg. Corp., supra. This the defendants have not shown. Plaintiff is therefore entitled to inspect and extract.

■ The scope of the inspection is another matter, however. Plaintiff has demanded and been refused a wide range of material, including data on the assets and condition of the corporation to be acquired, the proposed contract, the minutes of directors' meetings at which the transaction was considered, and the preliminary proxy material filed with the Securities & Exchange Commission. Certainly the records of another corporation whose acquisition is contemplated are not within the statutory meaning of corporate "books or records of account."

2. What is said in the opinion about plaintiff's demand for the inspection of the books is intended to apply equally to its demand for the stockholders list. At the time the earlier order was entered (*supra*, note 1), no opinion was filed.

Neither is the proposed contract. See Donna v. Abbotts Dairies, Inc., 20 Pa. Dist. & Co.R.2d 463 (C.P.1960), aff'd per curiam, 399 Pa. 497, 161 A.2d 13 (1960). On the other hand, the directors' minutes clearly are, and the proxy statements, concededly filed more than 10 days ago and hence no longer required to be kept confidential (see Securities & Exchange Proxy Rule 14a–6 [a] and [e], 17 C.F.R. 240.14–a–6[a] and [e]), would also appear to be within the purview of the statute. Defendants argue, however, that in the absence of an authoritative Pennsylvania decision on the scope of the statute, State of Missouri ex rel. Jones v. Ralston Purina Co., 358 S.W.2d 772 (Mo.Sup.Ct.1962), requires a narrow construction. That case is inapposite because the shareholder's request there was for an entirely different type of material —confidential office memoranda.

Having considered the merits, we arrive at the most formidable questions presented by this lawsuit—whether at this point, this court is empowered to grant plaintiff any relief and, if so, just what that relief is. The principal difficulty is the lack of jurisdiction in the federal courts to grant the writ of mandamus except as ancillary relief. See the comprehensive discussion of these problems in the analogous *quo warranto* context in 2 LOSS, SECURITIES REGULATION 1001–06 (1961). Given that jurisdictional restriction, can this court order the corporation to permit plaintiff's inspection of the records, which would be tantamount to mandamus—see Newark Morning Ledger Co. v. Republican Co., supra—but which the Pennsylvania courts undoubtedly could order under the state mandamus statute, 12 P.S. § 1911 et seq.? Or must plaintiff be remitted to its state court remedy? "Can a federal court in a diversity case achieve the same effect by way of injunction?" 2 Loss, 1002–1003. These are questions in what Loss appropriately calls an area "of great uncertainty," in which, as he points out, "it is still 'anybody's ball game.'" Id. at 1006.

■ Defendants contend that the issuance of an injunction against the holding of the stockholders' meeting to consider the acquisition unless plaintiff is allowed to see the stockholders list and the corporate books is merely a disingenuous way of circumventing the inability of the federal courts to issue mandamus in these circumstances. That simply is not so. It is, of course, true that if an adequate legal remedy is available only in the state courts, a plaintiff must seek it there, notwithstanding that he has properly invoked federal jurisdiction. Atlas Life Ins. Co. v. W. I. Southern, Inc., 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987 (1939). On "the need and propriety of equitable relief, the mere fact that the suit at law which is imminent can be brought only in the state court, or that it is pending there, is immaterial." Id. at 570, 59 S.Ct. at 661. But, as was clearly recognized in *Atlas*, federal equitable relief will issue if a remedy in the state courts does not, as a matter of state law in a diversity case, measure up in adequacy to the traditional standard required in equity to forestall the invocation of equitable powers.

■ In the case at bar, the state legal remedy in the nature of mandamus —an order merely compelling inspection of the stockholders list and of the corporate records—is inadequate. This is because time is so crucial. The corporation could allow the inspection and hold the meeting to consider the transaction as quickly as possible thereafter. The purpose of the inspection is to allow the plaintiff to familiarize itself with the merits of the transaction so that it can formulate its position and draft and circulate its proxy statement. Under Pennsylvania law, influencing the vote at an impending stockholders meeting is a proper purpose for which to demand a stockholders list. Goldman v. Trans-United Ind., Inc., 404 Pa. 288, 292, 171 A.2d 788 (1961). It is no less a proper purpose for which to demand an inspection of books in order to evaluate a transaction to be voted upon. This implies that the corporation ought not to

be able to defeat plaintiff's rights by delaying its procurement of the information beyond the date of the stockholders meeting or even unreasonably near to it. See ibid. And this in turn suggests that to prevent frustration of the purpose by the overly prompt action of the defendants, equitable intervention is warranted.

In opposition to this proposition, defendants rely on American Hardware Corp. v. Savage Arms Corp., 136 A.2d 690 (Del.Sup.Ct.1957), in which plaintiff stockholder had asked "that a meeting legally and duly called for the consideration of a proposed plan for the purchase of certain assets should be adjourned by court order to enable an objecting stockholder to submit to the individual stockholders a wholly unrelated plan." 136 A.2d at 692. This the Delaware Supreme Court declined to do, even though the defendants had allegedly been dilatory in supplying plaintiff with the stockholders list and financial and other information. Plaintiff had asked for the list and information only to enable it to complete the registration statement for the proposal that the court found unrelated to the subject of the meeting. In those circumstances it was decided that "the defendants' delay, if it existed, could not justify an adjournment of the meeting." Id. at 693.

The distinction between that case and this is plain. There the plaintiff's plan was unrelated to the meeting; here it is intimately connected with the subject of the meeting. There the plaintiff was about to make a wholly different offer; here it desires only to oppose the very offer being made. If anything pertinent to the instant case can be gleaned from American Hardware, it is this: had the two proposals been found to be related, an injunction to postpone the meeting would have been an appropriate remedy to undo the unfair consequences of defendants' wrongful delay.

In this case, as I have suggested, the positions of the plaintiff and defendants are as related as the two sides of a single coin. As in Steinberg, the "irreparable loss which would be sustained by the plaintiff if the interlocutory relief were not granted is the interference with the rights which the plaintiff previously enjoyed to have full and complete access to the records of the company * * * a sufficient length of time in advance of the annual meeting of the stockholders, to enable him to communicate with the stockholders as to the conditions and status of the company." 76 F.Supp. at 441. There is, therefore, no question of granting mandamus or its equivalent here. That remedy would be inadequate, because it could make no provision for controlling the time of the stockholders meeting.

But even if that were not so, it is by no means certain that the federal diversity court could not grant mandamus when that remedy would be granted by a state court as a matter of state law. The cases defendants cite, holding mandamus to be beyond the powers of the federal courts, do not specifically consider the question in the context of a state mandamus statute sought to be applied in the federal court under Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188]. As Loss remarks, "on the assumption that the equitable remedial rights doctrine is dead * * * the statutory case is easy: the federal courts will use the state statute * * *." 2 Loss 1005. But see Newark Morning Ledger Co. v. Republican Company, 188 F.Supp. 813 (D.Mass.1960).

For Erie purposes, the "remedy" of mandamus may be a matter of substantive state law which the diversity court would be bound to apply. Where, for example, the state courts would grant equitable relief, "the witholding of federal equitable relief would be inconsistent with the 'outcome determinative' test of York."[3] Id. at 1005–1006. The same

3. Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 1079 (1945).

can be said for the legal right to mandamus. For if, as Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965) asserts, the "twin aims of the *Erie* rule" are the "discouragement of forum-shopping and avoidance of inequitable administration of the laws," id. at 468, 85 S.Ct. at 1142, it would seem as important to insure that a diversity plaintiff get no *less* in the federal courts than he could in the state courts (except for "housekeeping rules," id. at 473, 85 S.Ct. 1136), as it is that he get no *more*.

To decide that a plaintiff who has otherwise properly invoked the diversity jurisdiction must seek his state rights in the state courts and not be permitted to make use of the mandamus remedy which would concededly be proper there would be to assume tacitly that when the general diversity jurisdiction conflicts with the otherwise limited federal jurisdiction, the former must always yield. In my view, the federal district courts have an obligation to attempt to make the diversity jurisdiction work. And if the federal courts under *Erie* could apply a state mandamus statute, they could, *a fortiori*, grant an injunction even if it is, as defendants protest, the indirect equivalent of mandamus.

Since the state mandamus remedy is inadequate—and probably even if it were found not to be—I am issuing a preliminary injunction against the holding of the meeting to consider the proposed transaction. The injunction is terminable on condition that defendants give to plaintiff what it has a right to under Pennsylvania law on a time schedule which will afford plaintiff a reasonable time to evaluate the information it gets as it bears on the proposed transaction. Plaintiff is granted leave to file its second amended complaint. F.R.Civ.P. 15(a). Defendants' objection thereto, which I treat also as a motion to dismiss, is denied.