**Andrew H. SCHNELL, Jr. and Jack Safer, Plaintiffs,**

v.

**CHRIS–CRAFT INDUSTRIES, INC., a Delaware corporation, Defendant.**

Court of Chancery of Delaware, New Castle.

Nov. 18, 1971.

See also Del.Ch., 283 A.2d 852.

H. Albert Young and Edward B. Maxwell, II, of Young, Conaway, Stargatt & Taylor, Wilmington, Carl F. Goodman, of Surrey, Karasik, Greene & Seham, New York City, and Jay L. Westbrook, of Surrey, Karasik & Greene, Washington, D. C., for plaintiffs.

David F. Anderson and Charles S. Crompton, Jr., of Potter, Anderson & Corroon Wilmington, Daniel P. Levitt, of Paul, Weiss, Rifkind, Wharton & Garrison, Washington, D. C., and Skadden, Arps, Slate, Meagher & Flom, New York City, for defendant.

MARVEL, Vice Chancellor:

Plaintiffs, who are stockholders of the defendant, seek a preliminary injunction against the carrying out by such corporation of a change in the date of its annual meeting of stockholders which was ostensibly accomplished by an amendment to its by-laws adopted at a directors' meeting held on October 18, 1971. As a result of such change in by-law and the fixing of a new date by the directors, such annual meeting is now scheduled to be held on December 8, 1971 instead of on the date

fixed in the by-law in question before its amendment, namely the second Tuesday in January, 1972.

Plaintiffs and other dissident stockholders, who constitute a stockholders committee on which the plaintiff Schnell serves, are dissatisfied with defendant's recent business performance, which has been poor, plaintiffs contending that defendant has sustained losses of over $6,500,000 over the past two years. Accordingly, they have embarked on a proxy contest against present management with the purpose in mind of electing new directors and installing new management at Chris-Craft.

The stockholders committee in question has had a formal existence since September, 1971. However, certain of its members have sought to impose their views on Chris-Craft's management since 1970, arguing that new management, achieved in one way or another, would be able to lift the defendant corporation from its slough of business losses. Nonetheless, fraud is not specifically spelled out in the complaint, the general inference of plaintiffs' charges being that defendant's present management is lacking in business acumen. However, the complaint does allege that the proposed sale by management of defendant's television station in Minneapolis for the alleged purpose of retiring debts would permit the payment of accrued and unpaid dividends on Chris-Craft's preferred stock, a large amount of which is held by certain of defendant's directors. However, defendant denies that the proceeds of such proposed sale are to be so used, contending that the purchase of another television station in New York is contemplated by application of the proceeds of such sale. In any event plaintiffs' charge is conjectural.

Plaintiffs contend that by advancing the date of defendant's annual meeting by over a month and by the selection of an allegedly isolated town in up-state New York as the place for such meeting, defendant's board has deliberately sought to handicap the efforts of plaintiffs and other stockholders sympathetic to plaintiffs' views adequately to place their case before their fellow stockholders for decision because of the exigencies of time. Plaintiffs accordingly pray for the entry of a preliminary injunction enjoining the convening of the annual meeting of stockholders of Chris-Craft as now scheduled for December 8, 1971 on the ground that the change in defendant's by-laws made on October 18, 1971 was improperly accomplished and constitutes a manipulation of corporate machinery solely to insure that present management may be perpetuated in office to Chris-Craft's detriment. Plaintiffs further pray that the order which they seek to have entered reinstate the former annual meeting date of January 11, 1972, as provided for in the by-laws before the October 18, 1971 amendment, or that the Court fix such other date and place as the Court may deem to be fair and reasonable for such annual meeting.

Prior to the 1967 legislative amendments to the Delaware Corporation Law, 8 Del. C., § 222, the section having to do with the fixing of annual meetings of defendant's stockholders provided that the date and place for an annual meeting of its stockholders for the election of directors, after the first meeting, was to be designated in the by-laws and that the by-law fixing such date and place could not be changed so as to fix a new annual meeting date within sixty days preceding the meeting date designated in the by-laws. Such statute further provided that notice of any such change should be given to each stockholder twenty days before an election is held.

However, in 1967 the Delaware Legislature, in approving a substantial redrafting of a number of sections of the Corporation Law, amended § 211 so as to provide as follows:

"(a) Meetings of stockholders may be held at such place, either within or without this State, as may be designated by or in the manner provided in the by-laws or, if not so designated, at the registered office of the corporation in this State."

"(b) An annual meeting of stockholders shall be held for the election of directors on a date and at a time designated by or in the manner provided in the by-laws. Any other proper business may be transacted at the annual meeting."

Also in 1967 8 Del.C. § 222 was amended to provide in part:

"(b) Unless otherwise provided in this chapter, the written notice of any meeting shall be given not less than ten nor more than fifty days before the date of the meeting to each stockholder entitled to vote at such meeting. * * * ".

On October 18, 1971, at a meeting of seven members of defendant's board of directors held in New York, notice of which, according to defendant's secretary, was given as required by the by-laws to every member of the board (minutes of which, however, were unjustifiably withheld from plaintiffs until the Court orally directed their production), Section 1 of Article 1 of Chris-Craft's by-laws was amended pursuant to the provisions of 8 Del.C. § 211(b) allegedly to give more flexibility in fixing the date of the annual meeting and to permit the directors to set a convenient date within a specified period rather than having a fixed date set by the by-laws. Such by-law amendment reads in part as follows:

"1. Annual Meeting. The annual meeting of stockholders of Chris-Craft Industries, Inc. (hereinafter called the "Corporation") shall be held for the election of the directors * * * in the two month period commencing December 1 and ending on January 31 and at such time as shall be designated by the Board. * * * "

At the same October 18 meeting, at which two directors, Linowes and Rochlis, were absent, the directors present fixed December 8, 1971, at 9:30 a. m. as the date and time for the annual meeting of the stockholders of Chris-Craft. Such meeting also named the Holiday Inn at Cortland, New York, where defendant operates a plant,

as the place of such annual meeting of stockholders, and October 29, 1971, as the record date for stockholders eligible to vote at such meeting.

As a result of such by-law amendment adopted pursuant to statutory authority and action taken thereunder, defendant's stockholders, to whom notice was mailed on November 8, will have received thirty days notice of the annual meeting as now scheduled under the terms of the applicable by-law, as amended on October 18, 1971, a change accomplished more than sixty days before the date of annual meeting fixed in the pertinent by-law before its amendment, namely January 11, 1972.

Plaintiffs contend, however, that notwithstanding defendant's compliance with the Delaware law having to do with the fixing and noticing of annual meetings, the obvious design of defendant's management has been to impede the efforts of plaintiffs and others aligned with them to solicit votes in favor of a rival slate of directors and thus constitutes a use of corporate machinery to retain present management's control and not for a purpose beneficial to the defendant and its stockholders.

In support of such contention, plaintiffs cite Condec Corporation v. Lunkenheimer Company, 43 Del.Ch. 353, 230 A.2d 769, a case in which the plaintiff's clear majority of Lunkenheimer stock was sought to be nullified by the simple expedient of the issuance by Lunkenheimer's management of 75,000 additional shares, thereby apparently breaking Condec's majority after it had legitimately acquired control. The Court caused such improperly issued stock, authorized, as it were, at the last minute, to be cancelled. Likewise the attempted freezing out of a minority stocksolder interest by a majority is actionable, Bennett v. Breuil Petroleum Corp., 34 Del. Ch. 6, 99 A.2d 236. Compare McPhail v. L. S. Starrett Co., 257 F.2d 388 (1st Cir.).

Defendant for its part does not concede that its management has taken advantage of a change in the Delaware Corporation Law

in order to blunt the attack on it of a substantial group of dissident stockholders, arguing, in addition to its contentions about weather conditions in Cortland, New York in January, as opposed to early December, that the normal delays in delivery of notices to stockholders resulting from Christmas mails supply another reason for choosing a pre-Christmas date for the annual meeting. Finally, defendant argues that as a result of its current financial records having been put in final form in connection with the settlement of a lawsuit in New York, defendant's final financial statements through August 31, 1971 are now ready for the December meeting but would be stale by mid-January.

I am satisfied, however, in a situation in which present management has disingenuously resisted the production of a list of its stockholders to plaintiffs or their confederates and has otherwise turned a deaf ear to plaintiffs' demands about a change in management designed to lift defendant from its present business doldrums, management has seized on a relatively new section of the Delaware Corporation Law for the purpose of cutting down on the amount of time which would otherwise have been available to plaintiffs and others for the waging of a proxy battle. Management thus enlarged the scope of its scheduled October 18 directors' meeting to include the by-law amendment in controversy after the stockholders committee had filed with the S.E.C. its intention to wage a proxy fight on October 16.

Thus plaintiffs reasonably contend that because of the tactics employed by management (which involve the hiring of two established proxy solicitors as well as a refusal to produce a list of its stockholders, coupled with its use of an amendment to the Delaware Corporation Law to limit the time for contest), they are given little chance, because of the exigencies of time, including that.required to clear material at the S.E.C., to wage a successful proxy fight between now and December 8. However, it is not denied that plaintiff received a

list of defendant's stockholders on November 10, and made a preliminary mailing the same date.

Plaintiffs specifically rely on the cases of Steinberg v. American Bantam Car Co. (W.D.Pa.) 76 F.Supp. 426, and Susquehanna Corporation v. General Refractories Company (E.D.Pa.) 250 F.Supp. 797, in which injunctive relief was granted, both such cases being concerned with situations in which the annual meetings of stockholders had been fixed for express dates and where the Pennsylvania statute pertaining to the fixing of dates for annual meeting of stockholders did not provide the flexibility now furnished by the pertinent Delaware statute. Furthermore, in the case first cited, the stockholders' meeting under attack had not been held on the date required by the corporate by-laws, while in the second case the court was faced with a situation in which a writ of mandamus for the production of a list of stockholders had been frustrated by management and the technicalities of Pennsylvania law. In the latter case the Court, in granting the equitable relief sought, stated in reference to a stockholder's right to inspection:

"This implies that the corporation ought not to be able to defeat plaintiff's rights by delaying the procurement of the information beyond the date of the stockholders meeting or even unreasonably near it."

Next, in Campbell v. Loew's Incorporated, 36 Del.Ch. 533, 134 A.2d 565, a case involving a fight for control waged between two factions of directors, this Court ruled with reluctance in an opinion of September 3, 1957 that a meeting of stockholders scheduled for September 12 must be adjourned under the circumstances demonstrated, the Court concluding:

"Nevertheless, I believe that some of the matters relied upon by plaintiff are of such substance (*viz; the alleged improper use of corporate funds to solicit proxies by two of the individual defend-*

*ants*) [1] that no action other than an adjournment to a fixed future date should be taken at the stockholders' meeting called for September 12. The Court will fix the adjourned date.

"The stay will give the Court an opportunity to pass upon the moving matters pressed upon the Court upon very short notice."

On the other hand, in American Hardwater Corp. v. Savage Arms Corp., 37 Del. Ch. 10, 135 A.2d 725, aff'd 37 Del.Ch. 59, 136 A.2d 690, a case in which stockholder plaintiffs had sought to place before a specially called meeting of stockholders a matter unrelated to the stated purpose of the special meeting, an order was sought enjoining the holding of such special meeting of stockholders which had been first set for November 22 and then, on October 30, renoticed for November 15.

The Chancellor stated:

"I note that plaintiffs have cited no authority which, absent fraud or other inequitable conduct, would entitle the court to interfere where the notice is in accordance with all statutory and by-law provisions. This is understandable since courts do not interfere merely because more time would be helpful to a stockholder. Something more must be shown. But the court need not rest its conclusion solely on this point. I say this because plaintiffs received the notice and defendant's proxy material October 31, 1957, and plaintiffs mailed out their own proxy material two days after receipt of the notice. Indeed, a second proxy solicitation by plaintiffs has already gone out. Thus apart from the first point mentioned, I am not satisfied that plaintiffs have made a showing that the notice is so short as to prejudice their right to solicit proxies."

The Supreme Court affirmed, noting that:

"This is no case of disregard of the by-law; the by-law was complied with.

If plaintiffs' argument were accepted, the courts could be required, in every case such as this, to override the by-law (usually adopted by the stockholders themselves), and fix the length of the notice. Presumably, as here, a sharp conflict of fact would be presented and would have to be resolved. It needs little consideration to realize that the adoption of this view would import serious confusion and uncertainty into corporate procedure. There is nothing unusual about a ten-day notice provision. For example, the General Corporation Law itself requires only ten days' notice of a stockholders' meeting called to consider an amendment to the charter (§ 242) or a reduction of capital (§ 244). In our opinion the circumstance of a proxy contest in itself furnishes no sufficient reason for the courts to interfere. Moreover, in the instant case, it did not appear that the objecting stockholders lacked sufficient time to solicit support for their position."

Finally, in the case of In Re Unexcelled, Inc., 28 A.D.2d 44, 281 N.Y.S.2d 173, plaintiffs had sought an order setting aside an election of directors of the corporation purportedly accomplished at an annual meeting on the ground that the meeting date had been manipulated to aid incumbent management. In reversing the trial court, the majority opinion of the Appellate Division pointed out that the New York Business Corporation Law § 602(b) provided that the annual meeting for the election of directors might be held on a date fixed by or under the by-laws and that the by-laws of the corporation provided that the:

"* * * annual meeting of shareholders shall be held on such date and at such time in each calendar year as its Board of Directors may in its discretion determine, but not later than the fourth Wednesday in July of each calendar year * * *"

1. Italicized phrase supplied.

In reversing the court below, the majority opinion pointed out that the stockholders are presumed to have knowledge of corporate by-laws, and concluded:

"We do not believe that the slight advantage which enures to management by having the discretion in the directors to fix the date of the annual corporation meeting is reason for court intervention to impose a restriction which the legislature has not seen fit to spell out."

Faced with the possibilities available to management as a result of the adoption of the 1967 amendment to the Delaware Corporation Law pertaining to annual meetings, plaintiffs and other stockholders such as Mr. Cohen and Mr. Kelly, who later joined the stockholders committee, while concerned with the dismal performance of Chris-Craft's business, and while meeting as early as February 1970 to discuss ways and means of supplanting defendant's management, failed to take time by the forelock. Instead of acting, these dissident stockholders talked and negotiated. Thus while the Porter suit, about which I am satisfied his employer, Cohen, had knowledge, was filed in August of this year, it was not then vigorously prosecuted by counsel of record for the plaintiff and did not come to trial until November 3, although, in the meantime, the stockholder committee had notified the S.E.C. of its proposed proxy battle.

In MacCrone v. American Capital Corporation (D.C.Del.) 51 F.Supp. 462, a merger case in which objecting plaintiffs contended that statutory notice " * * * at least twenty days prior to the date of such meeting * * *" was insufficient in which to protect their interests, in light of the complexity of the merger in issue, the Court, in upholding the adequacy of such notice, stated:

"It seems to me that there is no legal basis for these views. If such had been the intention of the legislature, it could easily, and should, have expressed such intention in clear and unmistakable language. But what is more important such a contention is at war with the dominant purpose of the Delaware Corporation Law to insure simplified corporate practice and procedure by vesting wide discretion in the board of directors."

Compare Hariton v. Arco Electronics, Inc., 40 Del.Ch. 326, 182 A.2d 22, aff'd, 41 Del. Ch. 74, 188 A.2d 123, and cases therein cited.

Next, plaintiffs contend that the fact that a large number of defendant's stockholders have registered their stock in street names is in itself sufficient reason for the setting of a new date for defendant's annual meeting because of the time required in reaching them, has been answered by the Supreme Court in the case of American Hardware Corp. v. Savage Arms Corp., supra, in which the Court stated:

"If an owner of stock chooses to register his shares in the name of a nominee, he takes the risk attendant upon such an arrangement, including the risk that he may not receive notice of corporate proceedings, or be able to obtain a proxy from his nominee. The corporation, except in special cases, is entitled to recognize the exclusive right of the registered owner to vote. Cf. 8 Del.C. § 183."

What plaintiffs fail to recognize is that they do not speak for a majority of defendant's stockholders as was the case in Condec Corp. v. Lunkenheimer Co., supra, in which plaintiff's majority holding was sought to be destroyed at the eleventh hour, and that the principles of corporate democracy relied on by them are not violated merely because they may have less time than they would like to have to present their views to fellow stockholders, American Hardware Corp. v. Savage Arms Corp., supra. Furthermore, it is clear from the record, which includes defendant's 1971 annual report, that business information concerning defendant's recent fiscal plight has been made public and is available to stockholders. Thus, this case does not present an unequal battle unfairly brought about by a last minute stratagem,

as was the case in Condec Corp. v. Lunkenheimer Co., supra, but a struggle for control in which defendant's management in timely fashion availed itself of an amendment to the Delaware Corporation Law, while plaintiffs were engrossed in debating inter sese and with defendant's management ways and means of displacing such management. Their tardy application for injunctive relief after finally deciding on a proxy fight, in my opinion, comes too late.

 A restraining order is designed to preserve the status quo in a proper case. However, a preliminary injunction must be affirmatively earned and should never issue merely because it will do no harm, Danby v. Osteopathic Hospital, 34 Del.Ch. 172, 101 A.2d 308, aff'd 34 Del.Ch. 427, 104 A.2d 903. Next, upon considering a plaintiff's probability of ultimate success, the benefits to be obtained by plaintiff were such an order to be issued must be weighed against the injury to be suffered by a defendant as a result of the issuance of such an order, Thomas C. Marshall, Inc. v. Holiday Inn, Inc., 40 Del.Ch. 77, 174 A.2d 27. And here I am satisfied that avoidance of the uncertainty which would be brought about by the entry of an order fixing defendant's annual meeting for January 11, 1972, and thus extending the period for a proxy contest beyond the statutory period now set (uncertainty which would hamper the avowed efforts of defendant's management to acquire a television station in New York and to dispose of its Piper Aircraft controversy) out-weighs the benefits which plaintiffs could hope to gain by a delay.

A preliminary injunction, as noted above, will not issue unless the applicant therefore has satisfied the Court that there is a reasonable probability of his success on final hearing, Consolidated Film Industries v. Johnson, 21 Del.Ch. 417, 192 A. 603. And in reaching such a judgment, all countervailing equities must be balanced, a process in which plaintiffs' slow approach towards a battle designed to oust management is outweighed by management's technical compliance with the law having to do with the calling of an annual meeting. I conclude that plaintiffs have failed to demonstrate their right to the injunctive relief prayed for.

On notice, a form of order denying plaintiffs' motion for a preliminary injunction declaring the change of corporate by-laws accomplished at defendant's directors' meeting of October 18, 1971 to be null and void and setting the date of January 11, 1972 for such annual meeting may be presented.