**Richard N. WEEKS**

v.

**AMERICAN DREDGING COMPANY.**

**Civ. A. No. 78–199.**

United States District Court,
E. D. Pennsylvania.

Feb. 9, 1978.

Dechert, Price & Rhodes, George J. Miller, Richard L. Berkman, Stephen E. Godsall-Myers, Philadelphia, Pa., for plaintiff.

Cohen, Shapiro, Polisher, Shiekman & Cohen, Patrick W. Kittredge, Alan M. Lerner, Howard J. Kaufman, Joseph M. Donley, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

### NEWCOMER, District Judge.

The plaintiff, Richard N. Weeks, is a shareholder of the defendant company, American Dredging Company. The plaintiff is also the Vice President of Weeks Dredging & Contracting, Inc. (Weeks Dredging). Weeks Dredging presently is attempting to take over American Dredging Company. To aid Weeks Dredging in its takeover effort, the plaintiff sought from the defendant a shareholder list. Af-ter defendant refused plaintiff's request for a shareholder list, plaintiff brought this action seeking a judicial order that would require the defendant to give the plaintiff access to the information he sought. A hearing on plaintiff's motion for a preliminary injunction was scheduled for Thursday, January 26, 1978. Prior to the commencement of the hearing, the defendant filed a motion to dismiss plaintiff's complaint contending that the Court did not have subject matter jurisdiction over this action. As such a motion should be considered prior to reaching the merits in the case, the Court, in accordance with Rule 12(d) of the Federal Rules of Civil Procedure allowed a preliminary hearing to be held on defendant's motion. After argument and testimony were presented, the Court concluded that the motion to dismiss should be granted. This memorandum is written so that the parties clearly understand the Court's reasons for granting the defendant's motion.

Plaintiff brought this action in federal court alleging jurisdiction under 28 U.S.C. § 1332, the diversity of citizenship provision. Plaintiff claimed that under the Pennsylvania Business Corporation Law the plaintiff, as a shareholder, was entitled to the defendant's shareholder list. Part B of Section 308 of the Pennsylvania Business Corporation Law, 15 Pa.Stat.Ann. § 1308 (Supp.1977), provides in pertinent part,

B. Every shareholder shall, upon written demand under oath stating the purpose thereof, have a right to examine in person or by agent or attorney, during the usual hours for business for any proper purpose, the share register, books, or records of account, and records of the proceedings of the shareholders and directors, and make copies or extract therefrom. A proper purpose shall mean a purpose reasonably related to such person's interest as a shareholder.

Plaintiff claimed that as he made written demand upon the defendant and his demand was refused, he had a right to seek redress under the Pennsylvania Business

Corporation Law for defendant's wrongful refusal to comply with Part B of Section 308. Under Part C of Section 308, if the corporation refuses to permit an inspection, a shareholder may apply to the court of common pleas for an order to compel such inspection.

While the defendant assuredly would have contested plaintiff's claim to the shareholder list, this issue was never reached. Defendant in its motion to dismiss claimed that the plaintiff had not satisfied the requirements for subject matter jurisdiction. In order to invoke the court's jurisdiction pursuant to 28 U.S.C. § 1332, it is incumbent on the plaintiff to establish (1) that the plaintiff and the defendant are citizens of different states and (2) that the amount in controversy exceeds $10,000, exclusive of interest and costs. Clearly the plaintiff satisfied the first requirement; the plaintiff is a citizen of New Jersey and the defendant is a Pennsylvania corporation. However, it is the second requirement of the diversity provision which the defendant asserted the plaintiff failed to satisfy; defendant claimed that the plaintiff could not show that the requisite amount was in controversy.

The real issue in this case is determining the "amount of the controversy." As has been stated, the controversy in this case involved defendant's obligation to supply plaintiff with the defendant's shareholder list. Valuing this controversy seems abstract, yet necessary, if one is to determine whether the jurisdictional prerequisites of the diversity statute are met.

At least two different approaches have been adopted by the courts to analyze this problem. Under the first approach, it is assumed that it is impossible to value the right to a shareholders' list and, therefore, the courts that follow this analysis hold that the amount in controversy requirement can never be met. *Whitney v. American Shipbuilding Co.,* 197 F. 777 (N.D.Ohio 1911). The second approach, and the one employed more recently by the courts, measures the amount in controversy by the value of the plaintiff's shares. If the value of the plaintiff's shares exceeds the jurisdictional amount, then jurisdiction may be taken under 28 U.S.C. § 1332. *Rosen v. Allegheny Corp.,* 133 F.Supp. 858 (S.D.N.Y. 1955); *Textron, Inc. v. American Woolen Co.,* 122 F.Supp. 305 (D.Mass.1954); *Susquehanna Corporation v. General Refractories Co.,* 250 F.Supp. 797 (E.D.Pa.1966).

The plaintiff asked that this Court employ yet another approach to determine the amount in controversy. Plaintiff urged that to compute the amount in controversy the Court look to the value of the tender offer. Plaintiff argued that as it was seeking the shareholder list to aid him in mounting his company's takeover effort, the tender offer's value was really the amount in controversy.

■ However, after considering the question presented, this Court found that the second approach was to be followed. Not only did the weight of authority favor adopting the second approach, but this Court found that the second approach was more consistent with the general rules of valuation used in injunctive relief cases. The traditional rule of valuation in injunctive relief cases is that the jurisdictional amount is measured by the value of the property right which the plaintiff seeks to have protected by an injunction. *Bitterman v. Louisville & Nashville Railroad Company,* 207 U.S. 205, 28 S.Ct. 91, 52 L.Ed. 171 (1907). Thus, the Court of Appeals for the Third Circuit has instructed that in cases involving equitable relief, the "jurisdictional amount is to be calculated on the basis of the property right which is being injured." *Ambassador East, Inc. v. Orsatti,* 257 F.2d 79 (3d Cir. 1959). In this case, the Court found, that the only property right which the plaintiff could seek to protect in this action is his share in the defendant corporation. The plaintiff sought this injunction under the Pennsylvania Business Corporation Law which grants all shareholders a right to a shareholder list if they have a proper purpose for seeking the information. It is only because the plaintiff is a shareholder that he would have a right to have this information disclosed. Therefore,

the Court found that the property right that is to be protected by Section 308 of the Pennsylvania Business Corporation Law is the shares of the shareholder. There is no evidence that Section 308 was enacted to aid persons in their takeover efforts and, therefore, the takeover, if it could ever be viewed as a property right, cannot be seen here as the property right which a plaintiff seeks to protect in an action under this law. Thus, the value of the plaintiff's shares equaled the amount in controversy in this action.

Plaintiff argued that in *Alex Brown & Sons v. Latrobe Steel Co.*, 376 F.Supp. 1373 (W.D.Pa.1974), the court rejected the approach that this Court adopted and measured the amount in controversy by the value of the tender. This Court could not accept the plaintiff's reading of the *Latrobe* decision. In *Latrobe,* an action under Section 308 of the Pennsylvania Business Corporation Law where the plaintiff sought a shareholder list, the plaintiff owned 100 shares in the defendant corporation valued at $11.00 per share. However, while the court apparently proceeded to the merits of the action, it did not raise or address the issue of jurisdictional amount. There is no indication of why the court allowed the case to proceed. This Court believed that it could not follow the plaintiff's interpretation of the decision in *Latrobe* and disregard what it believed to be the sound analysis employed in the second approach on the basis of a decision where the issue of jurisdictional amount never appeared to be raised.

Having decided to employ the second approach and to calculate the jurisdictional amount by the value of the plaintiff's shares, the Court allowed the parties to present testimony on the value of the shares. At this preliminary hearing, the plaintiff testified to owning 100 shares in the defendant corporation. He also stated that if the takeover effort did not succeed the shares would be worth $20.00 per share, and if it did succeed, the shares would be worth $30.25 per share. Obviously, then, even the plaintiff did not value his shares to

be in excess of the $10,000. jurisdictional amount. Concluding that the jurisdictional prerequisite was not satisfied, this Court was compelled to grant the defendant's motion to dismiss.

One further comment is necessary. While the approach taken by this Court has led to the dismissal of plaintiff's case from federal court, this Court believes that such action does not frustrate any state or federal policy and does not lead to an unjust result. When the Pennsylvania legislature enacted Section 308 of the Pennsylvania Business Corporation Law and gave shareholders a remedy for their corporations' failures to disclose certain information, it envisioned, as evidenced by the terms of the law, that plaintiffs would seek redress in the courts of common pleas of Pennsylvania. By reason of the federal diversity statute, such actions have been brought into federal court when the jurisdictional prerequisites have been satisfied. Congress has allowed actions based on state law to be taken into federal courts when the jurisdictional requirements are met, even though the states that provide the remedy contemplated that the lawsuits involving the remedy would be brought in state courts. However, as Congress has only allowed those actions that would ordinarily be destined for state court to be brought into federal court when certain jurisdictional requirements are present, those jurisdictional requirements must be taken seriously. The decision in this case did no more than that. It was an attempt to distinguish between those cases which Congress has allowed into federal court and those which it has decided must remain in state court. The rule adopted here for making that distinction will perhaps allow parties to know where to commence their actions in the future and therefore, hopefully, avoid the possible prejudice that results from a delay in an action that is dismissed for lack of jurisdiction. A clear rule of thumb, such as the one adopted here, would seem to enhance justice by clearly providing plaintiffs with direction. And as the plaintiff, here, can now return to the proper forum, this Court does not believe injustice has been worked by this Court's decision.